January 13, 2025

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United Courthouse
40 Foley Square New York, New York 10007

**Re:** *United States v. Oren Alexander*, No. 24-cr-00676 (VEC)

Dear Judge Caproni:

Oren Alexander ("Oren") submits this letter reply in opposition to the government's request for pretrial detention, DE 26. Oren also requests production of the videos referenced in the government's detention letter as a basis for bail. These videos are subject to *Brady* as they contradict the narrative previously advanced by the government in its initial letter and at detention hearings—and, to the extent that the government relies on them as a basis for detention, it must produce them to the defense and to this Court.

The government appears to misapprehend its burden. Motions for detention require a "two-step inquiry" whereby the court must first determine whether the government has shown serious risk of flight by the preponderance of the evidence[1] or

---

[1] Oren recognizes that the preponderance standard is binding on this Court. *See, e.g., United States v. Jackson*, 823 F.2d 4 (2d. Cir. 1987). He preserves for future review the argument that this standard of proof is lower than that which the Constitution requires for deprivations of liberty. *See, e.g., Addington v. Texas*, 441 U.S. 418, 424 (1979) (preponderance standard insufficient for civil commitment of mentally ill individuals); *Foucha v. Louisiana*, 504 U.S. 71, 82 (1992) (clear and convincing evidence required to confine mentally ill defendant); *Cruzan ex rel Cruzan*, 497 U.S. 261, 282-83 (1990) (upholding statute requiring clear and convincing for withdrawal of life support);

danger by clear and convincing evidence—and, if that showing is satisfied, the court then must determine whether there are reasonable conditions of release. *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009). Pretrial detention is not the norm but rather the carefully limited exception, and this is not one of those cases where *no* conditions at all exist to reasonably assure the safety of the community. *Cf. United States v. Salerno*, 481 U.S. 739, 744 (1987) (upholding facial constitutionality of Bail Reform Act in case where defendant was the mob boss of the murderous Genovese crime family and "threats, beatings, and murder" had become "business as usual"). Pretrial detention is meant for serious criminal organizations and their leaders, designed to address uncontrollable violent criminal activity and risks that cannot be quelled with any reasonable limitations. Here there is a material dispute as to whether any federal or other crime happened at all, and whether conduct in a social event was consensual or not. And no matter how much the government bemoans the "depravity" alleged here, the reality is that there is a material difference between these defendants and those for whom pretrial detention is contemplated under the Bail Reform Act.

Oren also objects to the government's characterization of his opposition to its motion for pretrial detention as a "bail application." D.E. 26 at 3. A defendant need not apply for bail, which is the "norm" under the statute and the Constitution. *See, e.g., Salerno*, 481 U.S. at 756. The government must move for detention, and it must meet its burden to persuade the Court that detention is warranted.

---

*Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (Fourteenth Amendment at a minimum requires clear and convincing evidence to terminate parental rights).

KLUGH WILSON LLC
40 NW Third Street, Penthouse One
Miami, Florida 33128

The government does not once in its Letter, DE:26, engage with the arguments raised in Oren's Letter, DE:21-1, regarding the legal deficiencies in this prosecution, including but not limited to: the non-commercial nature of the sexual conduct alleged; the lack of proceeds from the non-commercial sex alleged; the identity problems; the misconceived conspiracy theory alleged; and the interstate nexus problems. The government, by failing to respond, would seem to concede these deficiencies with the Indictment and ensuing prosecution, and draws this Court's attention instead to what it views as the "depraved" nature of sexual conduct involving the defendants.

The government's choice of words is telling here; the term depravity historically was used to reference original sin—a concept that some people believe unites us as a species. The term "depravity" has also been invoked throughout history to describe any deviations from prevailing libidinal norms. The government's characterization of someone's conduct as "depraved" does not make that conduct criminal *per se*—but rather should be viewed with a jaundiced eye, because in describing conduct as such, the government falls back on puritanical concepts of sexual regulation that have been tested and rejected in the courts and at the voting booths.

The government's description of the videos seized from Tal's apartment both confirms this problematic theory of the case, and substantially undermines and contradicts the government's narrative as disclosed in open court. In its Letter, the government declares that law enforcement has "seized numerous photos and videos depicting at least Oren, Alon, and several third parties recording or photographing themselves with women in states of intoxication and undress," DE:26 at 2, but does not point to any evidence that the women depicted were *involuntarily* intoxicated or

*involuntarily* undressed. It does not disclose whether it has contacted these women before deciding to portray them as victims in a federal criminal prosecution. Notably, the government stops short of asserting that any of the women portrayed in the videos did not consent to the sex that was allegedly depicted. To the extent that the government offers such videos as purported evidence of federal sex trafficking or even of non-consensual sex, and does so without having spoken to the women portrayed, it betrays the sloppiness and results-backwards nature of its own investigation.

The government at times *speculates* that the videos portray non-consensual sex, writing that "at least one defendant" (without saying which one) "physically manipulated the women's bodies in order to have sex with them." DE:26 at 2. This description could refer to any number of consensual sexual activities. The government also asserts that the women "did not actively participate in the sexual activity or turned away"—but passive participation in sexual activity does not translate to non-consensual sex; and a woman's "turning away" does not translate into her being *commercially trafficked*. Significantly, this characterization—what the government says the videos depict—is entirely inconsistent with the government's in-court descriptions of a "fairly consistent MO and pattern" of women screaming; of women being unable to move or speak; and of women being violently raped. These videos are *Brady* evidence; the *Brady* admonition is part of the record in the Southern District of Florida; and the government cannot shy from its *Brady* obligations. Moreover, the government has referenced these videos as a basis for detention. It thus must produce them not only under *Brady* (and potentially *Giglio*), but also under due process principles reflected in the best evidence rule and rule of completeness.

The government's speculation as to what is depicted, combined with its bombastic descriptions of what the videos portray, highlights the weakness of its case. The Alexander brothers are not charged with voyeurism, they are not charged with a subjective and loosely defined sexual deviance law; they are charged with federal sex trafficking and conspiracy to commit federal sex trafficking. And when pressed on the total lack of evidence to support federal sex trafficking, the government points to videos—filmed at an undisclosed date (potentially prior to the events charged in the indictment) and depicting individuals not even charged as co-co-conspirators.

For example, one of the videos referenced by the government supposedly portrays "a woman and a man (who is not one of the defendants) . . . engaging in intercourse. When the woman looked up and saw the camera, she hastily began to get up, saying 'no,' and stating, in sum and substance, that she does not want 'all of [his] friends.'" DE:26 at 2. The government leaps to the conclusion that this meant something other than the woman was not happy with being photographed, again jumping to the least probable conclusion. The government does not even proffer that the men were even acquainted with the men in the video. The reference to not wanting friends of the sexual partner to observe is more properly understood in those terms and is not evidence of rape, much less gang rape. Rather, the reference to this video reflects yet another speculative leap on the part of the government, and yet another attempt to buttress its case on improper and irrelevant propensity evidence, in its effort to detain Oren and his brothers. There are substantial questions in this case as to whether the conduct was even criminal under the statutes charged, and that weighs in favor of pretrial release.

Meanwhile, the government in its detention letter does not point to any evidence whatsoever of the defendants' drugging the women in the videos, as it has alleged was their regular practice. The rampant speculation that underlies the government's request for pretrial detention is inconsistent with due process. The speculative nature of the government's allegations is eminently relevant to this Court's consideration of the detention hearing factors. Possession of pornography, even that which some might view as distasteful or untoward, is not illegal and more importantly is not charged here. The government uses these videos to argue that the defendants presently pose an "immense danger," but it does not cite *any* evidence of *any* even purported criminal activity that has occurred.

All three of the Alexander brothers have married and started families; they are neither a danger to the community nor a serious risk of flight. The government argues that the defendants are a serious risk of flight under the statute because of their wealth. But just as the "judicial officer may not impose a financial condition that results in the pretrial detention of the person," 18 U.S.C. §3142(c)(2), equal protection principles mandate that a person may not be detained on the basis of his wealth any more than he may be detained on the basis of his poverty. A court in this district has previously embraced ample conditions like those proposed here, if this Court deems them necessary, to assure appearance. In *United States v. Dreier*, 596 F. Supp. 2d 831 (SDNY 2009), the defendant proposed a $10 million personal recognizance bond; the use of armed security guards; and other stringent conditions. Noting criticisms of the armed security proposal similar to those raised by the government, the court noted that "it is not a reason to deny a constitutional right against someone who, for whatever reason, can provide reasonable assurances against flight." *Id*. at 833. The court in

*Dreier* also noted that the state of New York, by statute, specifically provides for the licensing of "bail enforcement agents" for this particular task, and that "a provision of the Bail Reform Act . . . contemplates that a defendant may be released into 'the custody of a designated person[ ] who agrees to assume supervision," if that person is able reasonably to assure the judicial officer that the person will appear as required." *Id*. at 834. Noting all the conditions proposed by *Dreier*, the court was "confident that this considerable set of conditions w[ould] be sufficient to reasonably assure the defendant's appearance in court as required," and that release "accords, not only with the Bail Reform Act, but with the Constitution of the United States." *Id*. at 834-35. The same is true here.

As for the government's overblown extradition concerns, the government has not cited a single case in the last quarter century of a United States citizen fugitating to Israel and Brazil and not being readily extradited back. *See, e.g.* Patty Ryan, *Ex-mobster who talked to feds now wants to talk for a living*, Tampa Bay Times, January 27, 2015, available at https://www.tampabay.com/news/courts/criminal/ex-mobster-who-talked-to-feds-now-wants-to-talk-for-a-living/2215230/ (referencing 2006 extradition from Brazil of Gambino mobster John Alite). "Courts have previously endorsed the use of waivers of extradition, and Oren is prepared to execute one here—as he has every intention of staying here to fight the charges rather than attempting to flee to a country to which he has no real or substantial connection, no way to make a living, and no way to clear his name. *See, e.g. United States v. Cirillo*, 1999 WL 1456536, at *2 (3d Cir. July 13, 1999) (ordering pretrial release of a Canadian citizen who executed an 'irrevocable waiver of extradition'); *United States v. Chen*, 820 F. Supp. 1205 (N.D.

Cal. 1992) (granting motion to reconsider prior detention order but requiring that defendants execute waivers of challenges to extradition from any nation where they may be found).

The Alexander brothers are United States citizens with strong ties to this country, respect for this country's court process, and commitment to their family *here*. None of them has a dual citizenship to any other country. None of them has a criminal record. And none of them—across three detention hearings and two government filings asserting the strength of its case—has been accused of any conduct that rises to the level of a commercial sex act as defined in 18 U.S.C. § 1591.

Oren Alexander poses no danger to the community and he is not a flight risk. The presumption (in cases under Chapter 77 for which a statutory maximum of more than 20 years is prescribed[2]), as the government recognizes, is just one factor among many–and here, the totality of the detention hearing factors favors release under whatever conditions this Court deems reasonable. Oren will present evidence at the detention hearing of his social stability, his economic stability, his lack of criminal record, and his ties to the community—all which counsel in favor of release. This evidence of his history and characteristics, combined with the legally insufficient nature of the offense charged here, and the lack of evidence to support the crimes

---

[2] 18 U.S.C. 3142(e)(3)(D) provides for a presumption in such cases. However, 18 U.S.C. § 3142(e)(3)(E) specifically refers to 18 U.S.C. § 1591, the substantive offense charged here, and instructs that the presumption applies to offenses "involving a minor victim." None of the substantive offenses charged here is charged under § 1591's minor victim provision. Basic principles of statutory interpretation instruct that the specific governs the general, and that statutes should be read to avoid superfluity. Oren thus submits, and preserves as necessary for future argument, that the specific reference to offenses involving minor victims in § 1591, contained in subsection (e)(3)(E), would be rendered superfluous if 3142(e)(3)(D) is read to cover all § 1591 offenses, including those not involving minors.

KLUGH WILSON LLC
40 NW Third Street, Penthouse One
Miami, Florida 33128

charged here, compels a finding that there are conditions to assure the safety of the community and Oren's appearance at future court proceedings.

Oren asks this Court to deny the government's motion for pretrial detention and to impose a reasonable bond. Alon and Tal Alexander adopt this brief.

Respectfully submitted,

**KLUGH WILSON LLC**

BY:  /s/ Richard C. Klugh
Richard C. Klugh
Jenny Wilson
40 NW Third St. PH 1
Miami, Florida 33128
Tel: 305-536-1191
Email: jw.klughlaw@gmail.com