UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.                                                      24-00676-VEC

ALON ALEXANDER,
OREN ALEXANDER, and
TAL ALEXANDER,

    Defendants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF EVIDENCE UNDER *BRADY v. MARYLAND***

    Defendants Oren Alexander, Alon Alexander, and Tal Alexander, through counsel, hereby move to compel the government to produce exculpatory discovery material under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Defendants state the following grounds in support of this motion.

    Defendants seek discovery regarding the unidentified subjects or accusers the grand jury alleges to have been sex trafficked or otherwise assaulted by one or more defendants. The government thus far has declined to provide the identities of these accusers, and has relatedly failed to identify whom they allege the defendants sex trafficked, whom they allege the defendants enticed, and who they claim was not sex trafficked, but was otherwise sexually assaulted, as alleged in Count 1 (charging a conspiracy to commit sex trafficking).

    The defendants are charged with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594, along with related substantive-offense charges under 18 U.S.C. § 1591 and § 2422. The conspiracy count alleges several trips and social or dating events that the government claims

form the basis for sexual conduct or trafficking. To the extent that the government is in possession of exculpatory evidence related to such events or to the subjects of the charges, it must produce that evidence to the defense under *Brady*. "Suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution." *Id.* at 87. *See also Giglio v. United States*, 405 U.S. 150, 154 (1972) (non-disclosure of impeachment evidence falls within this general rule).

> A. ***Brady* material, including material relevant to the credibility of uncorroborated accusations of sexual contact, regarding: the identity, civil litigation status, contemporaneous communication record, interview claims subject to potential contradiction (whether internal contradictions, contradictions by photographic or other documentary evidence, or subsequent or earlier statements), and other surrounding evidence pertaining to any person who is subject of either substantive or conspiracy allegations of the indictment.**

The defendants request that this Court order the government to produce the following categories of evidence, including FBI 302 reports and other reports relating to the allegations made persons alleged to have been subjected to sexual conduct or intended to be so subjected. Material requested to be produced under *Brady* includes any documentation, witness statements, or investigative results reflecting, reporting, illustrating, or otherwise indicating, as to any person alleged to be the subject of improper sexual or related conduct:

- the absence of corroborating evidence that might support any one or all of the allegations, with or without formal investigative results of such matters such as the absence of torn, soiled, or ruined garments, the absence of any physical injuries or other consequential effects of the alleged conduct or photographs, medical records, documentation, or other indicia of any injuries or related indicia of any mental injury such as treatment records for any such alleged event;

- any evidence consistent with consensual sex or the absence of sexual contact, including evidence of electronic or written communications about any relevant encounter, any communication reflecting continued voluntary contact with a defendant or unindicted alleged conspirator or witness in periods after the alleged offense as to such person;

- that medical treatment was not sought or not administered for either drugging or rape (including drug tests; rape kits; STD testing); psychological treatment was not sought; contemporaneous reports were not made to police or other authorities or attorneys; the absence of complaints made to defendants or party planners;

- the absence of any other informal or formal complaints as to any incident alleged to be an improper sexual encounter, and the absence of any evidence, as to any person who was examined (such as at a hospital or doctor's office), of any testing showing the use of drugs attributed to the defendants;

- 
- any evidence that subjects of the charges sought medical attention and were deemed *not* to have any date rape drugs in their system, or any drugs other than those voluntarily consumed;

- an accuser's continued interaction with a defendant following any alleged incident; or any evidence of decisions to attend future events with the defendants or to recommend such events to others;

- the absence, as to any accuser, of evidence to support the government's claim of "sex trafficking"—including any evidence of subjects initiating contact with the defendants, seeking to bring friends to social events, or funding their own travel to or attendance at social events, as well as any evidence revealing that such subjects were free to leave social events at any time;

- subjects' voluntary drug use or voluntary intoxication at or around the time of the alleged events or thereafter;

- contemporaneous or later statements made to other persons conflicting with or failing to confirm any part of the accusations now made by the subjects, including statements at any time that a subject does not believe that a sexual assault occurred or does not know if sex occurred;

- identification by reasonable means and with any reasonable protective order restriction of any accuser to which any count of the indictment relates;

- any evidence that subjects of the charges *were not* provided so-called "luxury experiences" or other "material benefits"

- any evidence that any subjects of the charges attended any date or social event without the *promise* of "luxury experiences, travel, and accommodations" as alleged in the indictment;

- any evidence of any interaction with any subjects of the charges that *did not* occur at "high-end hotels" and/or "vacation properties";

3

- any evidence that any subjects of the charges met any one of the defendants *without* any "deception, fraud, or coercion" on the part of the defendants;

- any evidence that subjects of the charges had consensual sex with any of the defendants either prior to or following the allegations of non-consensual sex;

- any evidence that women who dated Oren and Tal Alexander who are now the subject of the charges attended events and parties for reasons other than the defendants' "prominent positions in the real estate industry";

- any evidence that anyone whom the government alleges was sexually assaulted was not enticed, harbored, recruited, transported, maintained or otherwise "lured" by the defendants;

- any evidence that subjects of the charges allowed other men, apart from the defendants, to pay for travel and accommodations;

- any evidence that subjects of the charges *did not* make "explicit demands to stop";

- any evidence of accusers lying about their age;

- any evidence that *any* accusers sought financial compensation, expressed interest in seeking financial compensation, or attended FBI interviews with plaintiffs' attorneys, *cf. United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024) (affirming sanctions of excluding the witness and imposing attorneys' fees based on mid-trial disclosure of agent's negotiations for benefits with the government's critical eyewitness, including offer to say whatever the agent wanted");

- any evidence of accusers' dishonesty; shifting stories; or inconsistencies in accounts of events;

- any evidence that accusers were aware of the accounts of events given by other accusers prior to being interviewed by the government; and

- any evidence that the alleged sex trafficking occurred or was intended to occur outside the Southern District of New York.

    **B.** ***Brady* material apart from specific accusers' lack of credibility, including that showing that uncorroborated accusations of commercial or other illicit sexual contact, that counters the narrative of the substantive or conspiracy allegations of the indictment.**

- any evidence that so-called "luxury experiences, travel, and accommodations" or "material benefits" or "concert tickets" were provided to dates *without* any sexual assault allegations,

4

- or to "others" attending dates or social events;
- that there was no sign or record of non-accuser attendee dissatisfaction or complaints as to a date or other social event; evidence from event witnesses or otherwise that social events included consensual sex or consensual group sex; statements from event witnesses that they neither saw nor were aware of G.B. or any date-rape drug or other crimes; the failure to interview other event attendees who have not volunteered claims of assault; or the absence of any records or statements evidencing the purchase or acquisition of date-rape or similar drugs during the alleged conspiracy period;

- the absence of evidence of any purchase of drugs by the defendants or any alleged co-conspirator for use at parties or otherwise by the defendants; the absence of any discussion in any communication regarding knowledge of the actual presence of drugs at any alleged social encounter;

- investigation results, including witness assertions or other evidence, indicating the non-commercial or non-transactional nature of any sexual contact in relation to the alleged "sex trafficking" interactions—such as the absence of any payment, gifts, forced labor, prostitution, escort services, employment or contractor status in relation to defendants, or other commercial relationship or compensation for or on account of any sexual matter; and any statements by any subject denying the commercial nature of any contact with the defendants'

- any evidence that the defendants genuinely considered "starting a relationship" with any of the subjects of the charges, *cf.* DE:63 at 2 (indictment alleging that the defendants used "the guise of starting a relationship to lure and entice");

- any evidence that the defendants and "other men" did *not* "pool financial resources" prior to any social gathering involving subjects of the charges, including the lack of corroborating evidence of such pooled financial dealings;

- any evidence that the defendants did not interpret a sexual interaction to be non-consensual. *Cf.* DE:63 at 2 (indictment alleging that defendants met with victims under "guise of starting a relationship"; then alleging sexual assault; then alleging that *defendants subsequently asked for another date*—i.e. "immediately following the sexual assaults, the defendants sometimes offered the victims . . . travel, concert tickets, and other luxury experiences"). The indictment frequently alleges conduct that suggests the defendants believed the interactions were entirely consensual; to the extent that the government is in possession of such evidence, it must be produced;

- any evidence that "other men" referenced in the Indictment who are not co-conspirators and who are not accused of sex trafficking likewise offered to pay for their date's travel or accommodations;
- 

5

- any evidence that defendants did not "share photographs" of the subjects of the charges, or were otherwise not attentive to their physical appearance;

- any evidence that any gatherings, trips, events, or dates occurred *without* the assistance of party promoters;

- any evidence that Alon and Tal Alexander lacked knowledge of the age of the subject of Count 5;

- any evidence that subjects of the charges *were not* "incapacitat[ed]" or were voluntarily intoxicated; and

- statements by any alleged co-conspirators that undermine the government's characterization of them as co-conspirators, including statements to the effect that they did not know of criminal sexual assaults or intended sexual assaults and any promises made to such individuals to obtain their statements; and any records, documents, electronically stored information or other data from or relating to such individuals to the extent the same fails to indicate knowledge of any criminal sexual activity or violence or drugging.

Defendants further, and more comprehensively, seek production of any other evidence the government is required to produce under *Brady*, 373 U.S. at 87. *See also United States v. Agurs*, 427 U.S. 97 (1976) (duty to disclose applicable even when there is no request by the accused). The government is required to produce any evidence that is "favorable to the accused." *Brady*, 373 U.S. at 87. Evidence calling into question or failing to corroborate lone-witness accusers has universally been recognized as material to the preparation and presentation of a defense and must be turned over under *Brady*. *See Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Marcus*, 2006 WL 8446893, at *3 (E.D.N.Y. Dec. 6, 2006) ("[T]aking into account the privacy considerations related to the records, the court orders the government to produce to the defendant any aspects of the records that tend to show that CS2 is biased or impeach her credibility, memory or cognition. In recognition of the importance of CS2's testimony to the government's case, the court orders the government to interpret its obligations under Brady and Giglio broadly and, in the event of doubt, produce the

records to the court for in camera review. As an additional measure, the court will review in camera those records the government did not turn over to the defendant and make additional disclosures of material information to the extent necessary.")

Because the discovery provided to date supports the conclusion that *Brady* information of the type described above is present is the FBI 302s or related state law offices' investigatory information,[1] especially related to accusers' accounts of events, such reports should be turned over. Information that must be disclosed includes "anything said or written, without regard for its reliability, credibility, or provability." *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997). Any doubts as to the usefulness of allegedly exculpatory evidence must be resolved in favor of disclosure, *United States v. Van Brady*, 726 F.2d 548, 552 (9th Cir. 1984), and the prosecutor's assessment of reliability is irrelevant to the *Brady* determination. *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006). Even if evidence is inculpatory as well as exculpatory, it must be produced. *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 164-65 (2d Cir. 2008). *See also Grant v. Allredge*, 498 F.2d 376, 382 n.7 (2d Cir. 1974) ("There may be instances where disclosures of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, ***particularly if it were to open the door to witnesses or documents requiring time to be marshaled and presented***") (emphasis added) (citation omitted); *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial . . . The only

---

[1] *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (government cannot suppress evidence by compartmentalizing it into separate case investigations or relegating it to different agencies; "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police")

question before (and even during) trial is whether the evidence at issue may be 'favorable to the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial."). *See also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (the *Brady* materiality standard applied on appeal should not be applied to pretrial discovery of exculpatory materials). In complying with *Brady* obligations, the government enjoys no authority to second-guess whether potential *Brady* evidence is admissible or relevant, or to refuse disclosure when it believes the evidence is false or has little probative value.

This is a case where the government's entire theory of culpability is based on the accusations of the subjects of the charges. Notably, in warrant applications, the lead FBI agent has indicated that the government chose to refer to interactions as rape—and thus sex trafficking—even when accusers did not characterize the interactions in that manner. And the warrant applications further suggest that accusers did not attribute any commercial component to any sexual activity. It is mandated under *Brady* and its progeny—for the defense to view the progression of the versions of events noted by the government, i.e., documented internal contradictions and changed recitations, and to compare those belatedly recounted allegations with contemporaneous records created at the time the incidents allegedly occurred. This includes, for example, but is not limited to, text and social media messages and dating app communications. Additionally, to the extent that a subject's accounts of events have changed in subsequent interviews with the government—or have differed from accounts that subjects have given in high-profile media interviews or complaints seeking civil damages—that too is exculpatory evidence that must be produced; as it is evidence of changed versions of stories following or preceding widely reported allegations in the news media.

The government's categorical rejection of the defense's request to identify—under any

8

protective order the government may propose—the accusers who are the subject of the indictment exemplifies the importance of an order directing the government to provide material that is *Brady* under multiple standards. The defense request as to accuser identity and accusations is meant to provide a bare minimum remedy for the prejudice of the absence of indictment identification of any alleged subject of the sexual trafficking allegations or specification of any alleged conduct. It is impossible for the defendants to know precisely what they are defending against, and thus to prepare for a defense, without the *Brady* material alleged above; without knowledge of *who* the government says they sex trafficked (as opposed to who is a Fed. R. Evid. 404(b) or 413 witness); and without knowledge of *what* the subjects accused them of having done. The evidence produced to date has revealed that the government faces serious proof deficiencies in its case-in-chief; that is not, however, a basis to violate the defendants' due process rights by refusing to tell them anything about the charges they must ultimately face. These proof deficiencies highlight the constitutional importance of timely producing *Brady* materials.

The "due process implications of *Brady*" require the Government to "disclose exculpatory information as soon as the character of such information is recognized." *United States v. Mitchell*, 372 F. Supp. 1239, 1257 (S.D.N.Y. 1973). The government's obligation under *Brady* supersedes the timing of discovery under the *Jencks* Act. *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("Complying with the *Jencks* Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*, ***a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500***") (emphasis added).

Given the constitutional rights at stake, the Second Circuit has previously reversed convictions where *Brady* material has been suppressed. *See United States v. Rivas*, 377 F.3d 195

(2d Cir. 2005) (government failed to provide statement of cooperator that was both inculpatory and exculpatory); *Triumph Capital*, 544 F.3d 149 (2d Cir. 2008) (government suppressed notes of an attorney's proffer which showed inconsistencies in witness's version of events); *Leka v. Portuondo*, 257 F.3d 89, 91, 93-94 (2d Cir. 2001) (reversing conviction where six days before trial the government disclosed the existence of an eyewitness who was living one thousand miles away, whose statement undermined the accounts of government witnesses).

The government is in possession of material that is favorable to the accused and that is material to preparation of the defense. The defendants therefore ask this Court to compel the production of such material under *Brady v. Maryland* and its progeny, including but not limited to the categories identified above; the FBI 302 reports detailing the accusations that form the basis for the charges; and the identity of the people whom the government intend to allege at trial are subjects of the charges (as it is impossible to impeach the subjects without knowing who they are).

Counsel for Alon and Tal Alexander have authorized undersigned to represent that they join in this motion.

### CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL R. 16.1

Undersigned counsel has attempted to confer with the government regarding the relief requested by this motion. Government counsel has not replied to a request for production of the materials identified by this motion emailed on June 1, 2025—one week prior to the filing of this motion. Government counsel has previously declined to provide the identities of the accusers forming the basis for the charges in the indictment.

        Respectfully submitted,

        KLUGH WILSON LLC
        40 NW Third St., PH 1
        Miami, Florida 33128
        Tel: 305-536-1191

BY:  /s/ Richard C. Klugh
        Richard C. Klugh
        Fla. Bar No. 305294
        E-mail: rklugh@klughlaw.com
        *Counsel for Oren Alexander*