UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.                                  24-00676-VEC

ALON ALEXANDER, OREN
ALEXANDER, and TAL ALEXANDER,

    Defendants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO SUPPRESS iCLOUD WARRANTS**

Defendants Alon Alexander and Oren Alexander[1] move to suppress evidence seized pursuant to warrants issued on August 16, 2024 (the iCloud warrant) in violation of the Fourth Amendment.[2] The overbroad, general warrant was premised on *Franks*[3] violations that permeated the application which lacked probable cause for the searches and seizures conducted. *See* DE:83-30 (copy of warrant and application). The material seized and its fruits must be suppressed.

On the basis of the improperly-supported warrant, the government rummaged through the Defendants' entire digital existence, without probable cause of a violation of any of the federal criminal statutes identified in the warrant, specifically, racketeering and sex trafficking conspiracy and Mann Act provisions. All of these offenses require elements that distinguish them from the scope of governance left to the States, yet the warrant application failed to acknowledge such fundamental elements and the absence of reliable evidence of them.

"A warrant is not a general hunting license, nor is it a mantle of omnipotence, which cloaks

---

[1] Tal Alexander adopts this motion. Oren and Alon Alexander also adopt the arguments raised in Tal's motion to suppress filed on June 9, 2025, to the extent applicable to them.

[2] This motion is supported by a contemporaneously filed declaration of counsel.

[3] *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)

its holders in the King's power to 'do no wrong."  *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996).  "And perhaps most important, it is not an excuse if the police are not frank with the magistrate in proceedings to obtain the warrant—proceedings that are typically *ex parte*."  *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

The warrant application purported to establish probable cause based on belated allegations ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████.  There were two inferences that the affiant ███████████████████████████████████████████████ ███████████ sought to advance, and both inferences were unfounded and contradicted by the facts.  The first inference advanced ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ claims were uncorroborated and internally inconsistent and thus neither credible nor reliable. ████████████████████████████████████████████ ████████████████████████████████████

The second inference that the affiant sought to advance was entirely conclusory and went unexplained in the application:  how could any of the alleged conduct match the elements of the federal statutes the affiant claimed were violated, ██████████████████████████ ██████████████████████████ r simply in the dating or social context of women going to a man's apartment for social-sexual relationships or diversion?

Under any view of the viability of the first inference offered by the affiant—that non-consensual sex occurred—the warrant application failed to establish probable cause of any federal

offense or of the existence or whereabouts of any evidence of the same.

As to the first proposed inference, however, that one or more sexual assaults occurred, the application fails because of:



Even under the unreliable theory proposed by the affidavit that some number of sexual

assaults did occur, any inference of federal law violations fails because:

- No evidence of any commercial sex *transaction*;

- No evidence that the defendants or anyone else *profited* from non-consensual sex;

- No claims by any alleged victim that she was sex trafficked;

- No evidence of any racketeering enterprise or conspiracy, much less one that is not time-barred; instead the affidavit supporting the warrant made only preposterous implication that a criminal organization formed when the defendants were as young as 14;

- No evidence of any other conspiracy or agreement, much less one that is not time-barred or ad hoc;

- No evidence of any other federal offenses relating to violations of the Mann Act, 18 U.S.C. § § 2421-2423;

- No evidence of any inducement to travel—only one allegation involves any travel, where the accuser willfully accepted an invitation and asked to bring a friend;



- Misleading suggestion that conspiracy to commit sexual assault implies commercial sex;

- Material omissions that the three defendants for whom *all communications and other records from inception to present* were sought had, since the conduct alleged, married, left the dating scene, and started families; and

- Material omissions that an unduly suggestive photobook identification process was used by at least one, and likely more, of the accusers to identify one or more of the defendants.

The unreliability of ███████████████████████████████████████ meant the overbroad federal search warrant was facially improper. And even if that unreliability and inconsistency of underlying allegations were discounted, suppression is mandated. The facial deficiency of the affidavit extends well beyond that factual gap, and even beyond the patterned, deliberate-or-reckless omission of crucial facts and misleading misstatement of others. Ultimately, it matters not whether any ninth-grade, school-days non-consensual sex or date rape had ever occurred; the affiant's extra-jurisdictional and anti-transactional allegations of such conduct do not establish probable cause of any federal offense—as evidenced in part by the fact that the government has not indicted the defendants for ***any*** of the allegations referenced in the affidavit (or, if they sought to, the grand jury failed to find probable cause).

### The Defective Warrant



The warrant lacked probable cause and relied on stale allegations. It made material

omissions both as to overarching exculpatory facts and those related to the specific allegations. And the search conducted was unconstitutionally overbroad, permitting the government to engage in a general rummaging of the defendants' property and to seize all of that property. This included *every single message, email, and photo* backed up from defendants' phones and computers or otherwise stored on iCloud. The information searched and seized was unlimited by time or topic, providing a deeply personal and unjustified window into the defendants' lives. It included privileged material prepared in consultation with counsel to defend against civil claims, which the government then used to build its own case against the defendants.

Non-consensual sexual conduct is of course a matter of public concern. It does not, however, allow the federal government to disregard the Constitution. "The central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." *United States v. Ortiz*, 422 U.S. 891, 895 (1975) (citing *Camera v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967); *Schmerber v. California*, 384 U.S. 757, 767 (1996)). The iCloud searches failed to so protect. Exclusion is warranted due to the total lack of probable cause as to any federal offense; the material omissions which misled the neutral magistrate; and the staggering and unconstitutional overbreadth of the warrant.

## I.    Relevant Facts

The defendants are accused of conspiracy to commit sex trafficking and other counts. The accusations of social-context sexual misconduct on which the charges were relate to accusations made long after the alleged events occurred. The search warrant challenged by this motion authorized the seizure of:

- all records or other information regarding the identification of the account;

- all records or other information regarding the devices associated with the iCloud accounts;

- the contents of **all** emails associated with the account from account inception to the present;

- the contents of **all** instant messages associated with the account **from account inception to the present**;

- the contents of **all files** and other records stored on iCloud;

- **all** activity, connection, and transactional logs for the account (including FaceTime call invitation logs; mail logs; iCloud logs; iTunes and app store purchases;

- **all** records and information regarding locations where the account or devices were accessed;

- all records pertaining to the type of service used;

- all records pertaining to communications between Apple and any person regarding the account; and

- all files, keys, or other information necessary to decrypt any data produced in an encrypted form.

The warrant further authorized law enforcement to review *all* the records produced in response to the warrant and did not limit in any way what may be seized.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ should have taken great care to present information that actually related to federal crimes and enable an impartial assessment of the relevant facts.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

which she speculated in large part, "as currently understood, meets legal definitions of the terms."

*Id*.



If police are going to be given a microscopic view of a person's entire life—a staggering privacy violation that most Americans probably do not even contemplate could occur when they text their friends, their loved ones, their co-workers, their therapists, their doctors, their parents, their spouses, their children—probable cause must support the extreme breadth and associated privacy violation of such a search.

## II. Legal Argument

A.    <u>**The warrant failed to establish probable cause to search for evidence of any federal offense.**</u>

"The requirement of probable cause has roots that are deep in our history. The general warrant, in which the name of the person to be arrested was left blank, and the writs of assistance, against which James Otis inveighed, both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing

of 'probable cause' before a magistrate was required." *Henry v. United States*, 361 U.S. 98, 101

(1959). "That philosophy later was reflected in the Fourth Amendment. And as the early decisions

both before and immediately after its adoption show, common rumor or report, suspicion, or even

'strong reason to suspect' was not adequate to support a warrant[.]" *Id*. (citation omitted).



She failed to

show any suggestion by anyone interviewed that they believed they had been trafficked.

---

[4] The subject offenses identified were racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); sex trafficking and sex trafficking conspiracy, in violation of 18 U.S.C. § 1591 and § 1594; transportation to engage in illegal sexual activity, in violation 18 U.S.C. § 2421; coercion and enticement, in violation of 18 U.S.C. § 2422; and transportation of a minor, in violation of 18 U.S.C. § 2423.

2423 of Title 18. ██████████████████████████████

████████████████████████████████████████████

██████████ [5]

     There was no *conspiracy* to commit a Mann Act offense alleged and no ongoing Mann Act conduct that could support a broad search.  In *all but one*  of the allegations, there was nothing remotely approaching interstate travel.  Similarly, there is no allegation establishing even reasonable suspicion of transportation of a minor, in violation of § 2423.



_____

one defendant.

The affidavit relied in blind faith on the statements of alleged victims, without sufficient corroboration or attempt to investigate. This does not create fair probabilities. The government does not get to stack several incidents for which there is insufficient probable cause on top of one another and then say "where there's smoke there's fire," DE:30 at 45 (government so arguing at Tal's detention hearing), and thus a conspiracy. It would be improper and akin to saying that if someone is observed smoking marijuana in a park on multiple occasions by multiple people—even if, based on the observations, it might have just been a tobacco cigarette, and even if no investigation was conducted to find out—then there is sufficient evidence to search their entire iCloud account for evidence of marijuana trafficking. No court would authorize such a warrant. But that happened here. Atwood relied on accusations of conduct that she had no jurisdiction to prosecute, and which the government has declined to prosecute in four subsequent indictments, to create a 46-page application suggesting that Atwood had conducted a comprehensive sex trafficking investigation when all she had done was talk to accusers, some of whom were seeking financial recourse (though the warrant omits this material information), and whose stories were often undermined by their own conduct and statements.

The affidavit seems at times to recognize the lack of probable cause for any federal crime, referring often ███████████████████████████████████████—blurring the lines between the subject offenses identified in the warrant and the state crimes which the federal government lacks jurisdiction to investigate and prosecute. This violated the requirement that probable cause be particular and specific. *See United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984) ("particularity requirement serves three related purposes: preventing general searches, preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization, and preventing the issuance of warrants without a substantial factual basis").

Probable cause must be established as to the crime identified in the warrant—not as to another crime. *United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013). Similar to the Fourth Amendment's limit on seizures, the scope of a search must be tailored to its underlying justification. *Cf. Florida v. Royer*, 460 U.S. 491, 500 (1983) (a detention must be "carefully tailored to its underlying justification"). "Probable cause does not demand 'hard certainties,' but it does require more than a 'hunch,' the latter being insignificant to support even an investigative stop." *Lauria*, 70 F.4th at 128. The fair probability showing is "informed by the breadth of the search authorization sought." *Id.* (citing *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (cautioning that breadth of search must not "outrun[ ] the probable cause supporting the warrant") (alterations in original); and *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("search authorization is properly limited to 'specific areas and things for which there is probable cause' to search to 'ensure[ ] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit") (alterations in original). Agent Atwood's affidavit failed to establish probable cause of any federal offense. It failed to establish probable cause for a search of this breadth. The warrant must be suppressed.

**B. A *Franks* hearing is required under binding Supreme Court authority**

The affidavit relies on allegations that were not properly investigated, where obvious exculpating evidence was recklessly and intentionally ignored, and omits key exculpatory facts that reasonably should have been known to Agent Atwood.  Under *Franks v. Delaware*, 438 U.S. 154 (1978), a hearing is warranted if the challenger makes a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and the false statement was "necessary to the finding of probable cause."  *Id*. at 155-56.  "Intentional or reckless omissions of material information may also serve as the basis for a *Franks* challenge."  *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).  "Recklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination."  *Id*. (citing *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th 1990); *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990); *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)).  In submitting affidavits, agents must include evidence if it is "the kind of thing the judge would wish to know" in determining whether probable cause exists.  *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).

In describing all of the allegations, Agent Atwood omitted and mis-characterized the total absence of evidence of any elements of federal crimes, including but not limited to commercial sex as that term is commonly understood in the case law.  Agent Atwood failed to offer any explanation of how she was interpreting commercial sex to expand beyond the case law.  She repeatedly omitted essential facts undermining the credibility of accusers.  She relied on allegations where there was strong evidence of consensual sexual activity and characterized conduct as rape or sexual assault when witnesses described it differently.  Atwood omitted that police who had investigated these matters deemed them not credible or worthy of further investigation.  She omitted explanations by

the alleged victims themselves of why they did not view the conduct as rape. As to the only allegation related to conduct with respect to a minor when the defendants were adults, Agent Atwood falsely conveyed statutory rape by failing to disclose the age of consent in the applicable state.



Even when contemporaneous evidence was available with respect to the allegations, Agent Atwood did not present. Four months after the warrant application, Agent Atwood testified that she was not aware of *any messages* from alleged victims to the defendants shortly following the assaults; that she had not imaged *any* alleged victim's phones; and that she had only relied on "messages that women have provided," further illustrating the reckless and lopsided nature of the investigation.

In relying on decades-old allegations in her affidavit, ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████ The failure to explain this type of investigative exoneration is anathema to the function of a warrant application made ex parte to a

magistrate judge. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█

magistrate █

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████ ██████ ██ █████ ██████ ██
████████████████████████████████████████████
████████████████████████████████████████████
████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

### C. The warrant was unconstitutionally broad, enabling a general rummaging abhorred by the Founders

The government in this case employed a catch-all, cast-the-net-wide approach to Fourth Amendment searches and seizures.  That approach was at odds with the Warrant Clause of the Fourth Amendment, which "categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "The manifest purpose of this particularity requirement was to prevent general searches." *Id*.  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id*.  The particularity requirement is designed to address the "central concern underlying the Fourth Amendment," that is, "the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009).  It ensures that "searches deemed necessary" are "as limited as possible," to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), and it "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927).  "As to what is taken, nothing is left to the discretion of the officer executing the warrant." *Id.*

Even if as to any of the brothers and any of the listed statutory allegations, there could have been probable cause for any warrant, and under any construction of the permissibility of that

warrant's scope, the warrant here was overbroad and its execution unbounded. The "general rummaging" warrants sent to Apple were designed to give the government a complete and deeply personal window into the defendants' *entire life*. The searches yielded massive repositories of information that the government was at liberty to freely rummage throughout the case—plucking from them intimately personal details, and privileged information, that the government then used to arrest the Defendants for allegations of date rape outside the scope of the statutes it was purportedly investigating. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), and the searches here exceeded the bounds of reason.

The iCloud searches were unconstitutionally overbroad, because they sought and yielded *all* information that Apple held about the Defendants, unlimited by time or topic. This Circuit has called for "some caution in assessing probable cause" when it comes to search warrants for cell phone location data (which was among the broad categories sought here), because "modern cell phone usage is so ubiquitous" that searches for data stored on phones can reveal "not only nearly the whole of an individual's movements but also, in the process, much about one's personal and professional life. *Lauria*, 70 4th. at 128-29 (citing *Carpenter v. United States*, 585 U.S. 296, 311 (2018) (stating with respect to cell phone location data that it provides an "all-encompassing record" of the holder's whereabouts, revealing not only "particular movements, but through them . . . familial, political, professional, religious, and sexual associations'); and *Riley v. California*, 573 U.S. 385, 403 (2014) (remarking that "modern cell phones" are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy")).

"The modern development of the personal computer and its ability to store and intermingle

a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (noting that "our case law requires that warrants for computer searches must *affirmatively limit* the search to evidence of specific federal crimes or specific types of material") (internal quotation marks and citation omitted).  "The potential for privacy violations occasioned by an unbridled exploratory search of a hard drive"—or other digital storage unit—"is enormous." *United States v. Galpin*, 720 F.3d 436, 445, 447 (2d Cir. 2013).  Digital searches "often involve a degree of intrusiveness much greater in quantity, if not different in kind, from searches of other containers." *United States v. Payton*, 573 F.3d 859, 862 (9th Cir. 2009).  "Because any search of an electronic source has the potential to unearth tens or hundreds of thousands of individual documents, pictures, movies, or other constitutionally protected content," it is "imperative that the government describe the items to be searched with as much specificity as the government's knowledge and circumstances allow." *Matter of the Search of Information Associated with [redacted]@mac.com that Is Stored at Premises Controlled by Apple, Inc*, 25 F. Supp. 3d 1, 6 (D.D.C. 2014).  Adherence to such principles was thus imperative here, yet was not reflected in the government's sweeping search and wholesale seizure.

Illustrating the overbreadth of these warrants was the warrant's request to search *and* seize *everything* in the accounts.  It is well-established at this point that technology companies are willing and able to content-restrict the information disclosed to the government, yet no such  content restrictions existed here.  *See* YouTube, "Way of a Warrant," (Mar. 27, 2014), www.youtube.com/watch?v+MeKKHxcJfh0 (explaining Google's ability to provide date-and-content-restricted data in response to search warrants); *see also In re [Redacted]@gmail.com*, 62

F. Supp. 3d 1100, 1103 n.4 (N.D. Cal. 2014) ("Google provides a very clever stop-animation description of how it says it typically responds").  If Google is able to content-restrict the data it provides, there is no reason Apple cannot do the same.

Nor were any temporal limitations sought.  *See United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013) (absence of temporal limit reinforced court's conclusion that warrant functioned as a general warrant); *United States v. Costin*, 2006 WL 2522377, at *12 (D. Conn. July 31, 2006) ("a warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular"); *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2005) (holding that a warrant was insufficiently particular because it was not limited to documents from the time period for which the magistrate had probable cause to believe fraud had occurred); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding warrant overbroad and invalidating search where the "government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place"); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) (finding "[a] time frame should also have been incorporated into the warrant" and invalidating search).

The warrant's authorization that law enforcement personnel be permitted to review *all* the records produced in response to the warrant, and seize whatever it wanted, violated the Fourth Amendment's fundamental requirements that seizure not be left to police discretion.  *See Marron v. United States*, 275 U.S. 192, 195 (1927) (recognizing that general searchers pursuant to writs of assistance were "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that was ever found in an English law book,' since they placed 'the liberty of every man in the hands of every petty officer").

Other federal courts have rejected overbroad warrants like the one in this case.  *See, eg.*

*United States v. Matter of Search of Info. Associated with Fifteen Email Addresses Stored at Premises Owned*, No. 2:17-CM-3152-WC, 2017 WL 4322826, at *7 (M.D. Ala. Sep. 28, 2017) (upholding Magistrate Judge's denial of search warrant applications because "the Government's current request for *all* data related to *all* the email accounts is too broad") (emphasis in original); *Matter of Search Info. Associated With Four Redacted Gmail Accounts*, 371 F. Supp. 3d 843, 845 (D. Or. 2018) (warrants requiring Google to disclose the "contents of all emails associated with the email accounts" were "overbroad"); *In re [Redacted]@gmail.com*, 62 F. Supp. 3d 1100, 1103 n.4 (N.D. Cal. 2014) (denying Google Search warrant application; court noting that it was "unpersuaded that the particular seize first, search second proposed here is reasonable in the Fourth Amendment sense of the word"); *In re Search of Google Email Accounts*, 92 F. Supp. 3d 944, 952 (D. Alaska 2015) (denying warrant application that "would authorize the government to seize and search the *entirety* of the six Gmail accounts, even though the government has only established probable cause to look at a small number of emails within a narrow date range"). The iCloud warrants here were also unlimited in scope and time frame, further illustrating their overbreadth. *See, e.g., United States v. Matter of Search of Information Associated with Fifteen Email Addresses*, 2017 WL 4322826, at *7 (government's request for all data related to all email accounts was too broad).

The iCloud warrants in this case set a dangerous precedent, because they provide that any time a handful of people come forward with belated accusations —no matter how credible or incredible, and no matter how dated—the government can search the accusee's *entire digital existence* on the basis of such uncorroborated allegations. The affidavit did not even attempt to argue any federal crime; it simply described "sexual assault and rape." And it reached far beyond applicable statutes of limitations and jurisdictional limits in order to do so.

The warrants here were "overbroad in every respect." *United States v. Leary*, 846 F.2d 592,

605 (10th Cir. 1988). They contained "no limitation on the scope of the search," were "not as particular as the circumstances would allow or require," and "extend[ed] far beyond the scope of the supporting affidavit." *Id*. at 606. They were unlimited by time, date, or topic—failing to satisfy the fundamental probable cause and nexus requirements of the Fourth Amendment. The warrant returns therefore must be excluded.

**D. The warrant was overbroad in its execution, improperly seizing a trove of attorney-client privileged information that the government has used to investigate and prosecute the defendants.**

To the extent that the government tries to claim the warrants were limited in any way on their face, that cannot save the iCloud warrants, which were certainly overbroad in their execution. "If the scope of a search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). Wholesale suppression is required when government agents effect a widespread seizure of items that were not within the scope of the warrant and do not act in good faith. *United States v. Shi Yan Liu*, 239 F.3d 138,

The seizure gave the government *all* of the content of the iCloud accounts—not just those related to the allegations in the search warrant. The government seized information that was irrelevant to any federal investigation. And it seized attorney-client privileged material, and relied on it heavily in building its case and prosecuting the brothers.

Under any reasonable interpretation of the warrants, the seizure should not have included this privileged material—but it did, and that material was relied upon in seeking additional warrants, in seeking pre-trial detention, and likely in seeking indictment by the grand jury as well. This must be suppressed. "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The purpose of the

24

privilege is to "encourage full and frank communications between their attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The privileged material seized by the government and used here was a folder in one of the defendant's iCloud accounts titled "The Case." The folder was prepared in consultation with counsel as part of a joint and privileged effort by the defendants to gather evidence in response to civil lawsuits filed against them. It was prepared at a time when the defendants knew they were under federal investigation related to these claims. The creation of the folder was discussed with counsel, and a link to the folder was shared with counsel—who then retained continuous access to the folder as new materials were uploaded. The Second Circuit has held that writings or other records communicated to an attorney or created for the purpose of later being used in communications with counsel "fit squarely within" the scope of the privilege. *United States v. DeFonte*, 441 F.3d 92, 95 (2d Cir. 2006). *See also Clark v. Buffalo Wire Works Co*, 190 F.R.D. 93 (W.D.N.Y. 1999) (client took notes to facilitate discussion of matters with attorneys and turned such notes over to the attorney; notes amounted to a confidential communication even though attorneys did not read them contemporaneously); *Bernbach v. Timex Corp.*, 174 F.R.D. 9 (D. Conn. 1997) (notes taken by client in anticipation of her meeting with her attorney were privileged; she had actually communicated the information in those notes to her attorney).

The case folder was created by Alon Alexander as part of a joint defense preparation, and a link was shared with counsel who retained continuous access to that link as Alon continued to upload materials—thereby communicating those materials to counsel via the link. This is quintessential privileged material to which the government never should have had access.

The government not only illegally accessed this folder: It used it to build its case. Agent

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████    Government attorneys also relied on this privileged material, stating at Alon's detention hearing, "In response to these public accusations Alon began compiling files on each publicly identified victim, as well as several that had not yet made public accusations as part of an apparent attempt to discredit his accusers."  Alon Detention Hearing Tr. at 17.  If this were not part of a public court record in a criminal case, one might assume it to be political satire.  A civil defendant is obviously allowed to compile files to share with an attorney on the people seeking millions from him—and government attorneys since the summer both knew and recklessly disregarded the fact that the Alexander brothers were so represented; indeed, the FBI had been speaking to opposing counsel in the civil matters for which the defendants initially obtained representation.  A person under FBI investigation is allowed to compile files to share with an attorney, and the Wall Street Journal had reported on July 8, 2024, that the brothers were under investigation.  The government's mislabeling of this privileged work product as an "attempt[ ] to silence any women who do complain" and "to interfere and intimidate and stop victims from reporting" is indefensible.

The seizure of these materials cannot be defended under any reasonable construction of good faith.  This was a wilful and flagrant violation of the oldest privilege known to common law, and the most important to our adversarial system.  Any evidence obtained as a result of the government's

access to privileged materials—created in the course of legal representation and shared with attorneys, during a time when defendants faced civil sexual assault lawsuits and were under investigation by the FBI—must be excluded. Any witnesses located as a result of this privilege violation must be excluded. Any other fruits of the violation must be excluded. And a hearing must be held to determine the scope and implications of these violations.

The privilege violations were enabled in part by the fact that Atwood requested non-disclosure—that is, that Apple not notify the defendants, its subscribers, of the existence of the warrant. Atwood requested such non-disclosure by making false representation that the existence of the investigation was not known to the public, when the Wall Street Journal had published an article over a month earlier disclosing the existence of the investigation. Had the defendants or their counsel been notified of the existence of the violation, they could have asserted privilege over this folder (as criminal counsel for Alon did when it was raised at the detention hearing—but by then it was too late, as the government had already relied extensively on it in building its case) before the damage was done. Now, however, the implications of the privilege violation, which gave the government a substantial strategic advantage, must be addressed.

## CONCLUSION

The fruits of the unconstitutional warrants and warrant executions—including derivative use of the material to obtain subsequent warrants or evidence—should be suppressed. The defendants request an evidentiary hearing to address each of the improprieties discussed in the motion and their impact in vitiating the warrants and the searches and seizures.

Respectfully submitted,

BLACK SREBNICK                                    /s/ Howard Srebnick
201 South Biscayne Boulevard, Suite 1300          HOWARD SREBNICK
Miami, Florida 33131                              Florida Bar No. 919063
(305) 371-6421                                    HSrebnick@RoyBlack.com

27

*Counsel for Alon Alexander*

KLUGH WILSON LLC
40 NW Third St., PH 1
Miami, Florida 33128
(305) 536-1191

/s/ Richard C. Klugh
RICHARD C. KLUGH
Fla. Bar No. 305294
E-mail: rklugh@klughlaw.com
*Counsel for Oren Alexander*