

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

26 Federal Plaza, 37ᵗʰ Floor
New York, New York 10278

October 31, 2025

**BY EMAIL & ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:    ***United States v. Alon Alexander, Oren Alexander, and Tal Alexander,* 24 Cr. 676 (VEC)**

Dear Judge Caproni:

  The Government respectfully submits this letter in opposition to the defendants' request that the Court administer a juror questionnaire to prospective jurors in this case. (Dkt. 164 ("Def. Ltr.")). For the reasons set forth below, a juror questionnaire is neither warranted nor appropriate here and would only needlessly prolong and delay the jury selection process.

### I.  Applicable Law

  "[T]he obligation to impanel an impartial jury lies in the first instance with the trial judge." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). It is well-established that because federal judges "must rely largely on [their] immediate perceptions" to impanel an impartial jury, district courts "have been accorded ample discretion in determining how best to conduct the *voir dire*." *Id.* (citing cases); *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (same); *see also United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). Accordingly, "[w]hether to use a jury questionnaire is within the discretion of the Court." *United States v. Tomero*, 486 F. Supp. 2d 320, 324-25 (S.D.N.Y. 2007) (citing cases); *see also, e.g.*, *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (court did not abuse discretion in denying request for juror questionnaire); *United States v. Salameh*, 152 F.3d 88, 120-21 (2d Cir. 1998) (same). The Second Circuit thus "will not interfere with the manner in which the district court has chosen to conduct *voir dire* unless an abuse of discretion is 'clear.'" *Treacy*, 639 F.3d at 46; *see also id.* ("Although we have approved the use of questionnaires as one of many tools available for *voir dire*, we have expressly declined to hold that district judges are ever obligated to make use of this procedure in selecting juries." (internal quotations and citation omitted)).

### II.  Discussion

  A juror questionnaire in this case is neither warranted nor necessary and would materially hinder jury selection by injecting a cumbersome and inefficient process. The defendants' right to a fair trial and to a fair jury "will be protected adequately even without use of a jury questionnaire"

through a proper *voir dire* and jury instructions. *Tomero*, 486 F. Supp. 2d at 325. The Court accordingly should exercise its sound discretion to deny the defendants' request for a juror questionnaire.

*First*, a juror questionnaire would be cumbersome and inefficient. Contrary to the defense's unsupported assertion that a questionnaire would "enable a more efficient jury selection process," (Def. Ltr. at 2), it would instead prolong jury selection and lead to a waste of judicial resources that is neither in the interest of the public nor of the prospective jurors. *See, e.g.*, *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Nov. 4, 2021) (Dkt. 275 at 13) (denying defense request for written questionnaire, stating: "I'm not planning to do a written questionnaire in this case. I find that questioning the potential jurors in person is more reliable and efficient. And I will ensure that a fair jury is selected."); *see also Treacy*, 639 F.3d at 36 ("I never give [juror questionnaires], ever. I did it once, and it was the biggest mistake I ever made."; "The[re are] many problems with questionnaires, but the single biggest problem [ ] is that there is no one in the world who can draft a question that will not have ambiguities that will be, as I learned the one time [I] tried it, that will be picked up on by various prospective jurors. And thus during the voir dire, a huge amount of time will be spent explaining to a juror why he or she misunderstood the question in the questionnaire or finding out that . . . the way he interpreted it was not the way the lawyers interpreted it." (internal quotations and citation omitted)).

If a juror questionnaire was administered in this case, the Government understands that the process would entail: (1) the parties and the Court drafting a juror questionnaire; (2) summoning prospective jurors to the courthouse to read through and complete the juror questionnaire; (3) a review of the completed juror questionnaires by the Court, the defendants, their numerous counsel, and the Government to determine which jurors, if any, should be removed from the venire for cause; and (4) oral *voir dire* (which would likely involve follow-up questions to clarify the answers provided on the questionnaires). This multi-step process would likely take considerable pre-trial preparation and several days of juror time, if not longer. An oral *voir dire* would eliminate the first three steps while still appropriately disposing of for-cause challenges. Jury selection would begin with the oral questioning of prospective jurors and the parties could propose juror strikes the same day. In-person questioning would also allow the Court and the parties to directly assess the jurors and their responses—and ask follow-up questions on the spot. Such a process would lead to the same outcome: the selection of a fair and impartial jury.

*Second,* the defendants' right to a fair and impartial jury can be adequately—indeed, best—protected through the Court's *voir dire* and jury instructions. The defendants argue that "[p]otential juror bias must be rigorously ferreted out in the jury selection process so the parties can proceed with an impartial jury and receive a fair trial." (Def. Ltr. at 2). The Government agrees. But that shared concern is not obviated by using a questionnaire. Indeed, the defendants have "failed to demonstrate that use of a *written* questionnaire is necessary or preferable to a proper *voir dire* conducted by the Court." *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (emphasis in original). There is simply no basis to conclude that a questionnaire is more effective at weeding out bias than the standard process employed by this Court and others. Indeed, it would be preferable for the Court in the first instance and in person to pose questions to potential jurors, at sidebar where warranted. In-person questioning allows the Court and the parties to directly assess the jurors and their responses—and to ask follow-up questions on the spot. *See*

*Rosales-Lopez*, 451 U.S. at 189. A careful and thoughtful approach to jury selection can certainly be achieved through the Court's proper *voir dire*.

*Third*, the circumstances of this case do not necessitate a juror questionnaire. The customary practice in this district is oral *voir dire* and that process is a time-tested method for selecting a fair and impartial jury. The process works, and it has been used time and again, even in cases that have garnered significant media attention. Written questionnaires have been administered only in rare cases, sometimes with the consent of both parties (*see*, *e.g.*, *United States v. Maxwell*, No. 20 Cr. 330 (AJN)), where the defendant is nearly universally known to the public (*see*, *e.g.*, *United States v. Combs*, No. 24 Cr. 542 (AS)), and other in circumstances that are not present here. For example, courts in this district have used written questionnaires as a result of the decision to empanel an anonymous jury, *see, e.g.*, *United States v. Thai*, 29 F.3d 785, 800-01 (2d Cir. 1994) (discussing the use of a written jury questionnaire in selecting an anonymous jury as a result of, among other things, two defendants having threatened and killed a civilian witness), and in capital cases, *see, e.g.*, *United States v. Quinones*, 511 F.3d 289, 299-300 (2d Cir. 2007) (discussing the use of a written jury questionnaire in a case in which jurors were asked to deliberate, following a penalty phase, as to whether or not to impose the death penalty).

The purported existence of "sensitive topics at issue in this case, such as group sex and nudity" do not militate in favor of a different result. (Def. Ltr. at 2.) To the contrary, potential jurors may be reasonably reluctant to disclose in writing sensitive experiences involving sexual activity and assault without knowing how the written documents will be used by the Court. For this reason and others, courts routinely deny requests for jury questionnaires in cases involving sensitive, coercive, or alternative sexual practices. *Ray*, No. 20 Cr. 110 (LJL) (S.D.N.Y. Jan. 6, 2022) (Dkt. 290 at 4) (denying request for juror questionnaire in sex trafficking case involving sleep deprivation, psychological and sexual humiliation, verbal abuse, threats of physical violence, physical violence, threats of criminal legal action, alienating the victims from their families, and exploiting the victims' mental health vulnerabilities); *United States v. Harding*, 273 F. Supp. 2d at 428-29 ("Harding requests that the Court use a jury questionnaire to elicit prospective jurors' attitudes concerning, *inter alia,* homosexuality and child pornography in order to evaluate their ability to serve fairly and impartially in this case. The Court is aware that some of the issues likely to arise in this case may be regarded as sensitive by some prospective jurors. Nevertheless, Harding has failed to demonstrate that use of a *written* questionnaire is necessary or preferable to a proper *voir dire* conducted by the Court."). In fact, judges in this District regularly impanel fair and impartial juries in cases involving sexual abuse, sexual exploitation, and enticement without questionnaires and instead by conducting proper oral *voir dires* and providing adequate jury instructions. *See, e.g.*, *United States v. Purcell*, 18 Cr. 81 (DLC); *United States v. Kidd*, 18 Cr. 872 (VM); *United States v. Benjamin*, 18 Cr. 874 (JSR); *United States v. English*, 18 Cr, 492 (PGG); *United States v. Dupigny*, 18 Cr. 528 (JMF); *United States v. Almonte*, 16 Cr. 670 (KMW).

*Finally*, the defendants also contend that a juror questionnaire is appropriate because "pretrial publicity in this case has been rampant for over a year now." (Def. Ltr. at 2.) While this case has garnered media attention, there is no basis to conclude that a customary *voir dire* process will fail to properly screen for pretrial bias, as it has in other high-profile cases. *See, e.g.*, *United States v. Menendez*, No. 23 Cr. 344 (SHS) (S.D.N.Y. Apr. 22, 2024) (Dkt. 344 at 64, 68) (denying defense request for a questionnaire and explaining, "I don't really find that they are terribly

helpful"); *United States v. Hadden*, No. 20 Cr. 468 (RMB) (S.D.N.Y. Jan. 20, 2022) (Dkt. 151 at 1) (denying defense request for juror questionnaire as "not necessary to select a fair and impartial juror in this case" and noting the Court's practice of conducting trials, "including those trials involving pretrial publicity," without using a juror questionnaire); *United States v. Doud*, No. 19 Cr. 285 (GBD) (S.D.N.Y. Jan. 10, 2022) (Dkt. 134 at 86) (a juror questionnaire was inefficient and not "necessary" because the court could "adequately address the issues" and questions for the potential jurors, and concluding that the case was not "so unique[] that it would warrant a jury questionnaire" and that the "nature of the questions in the jury questionnaire are pretty much the questions that I can ask as a group of the jurors and have them indicate whether they have some response and follow-up questions with those jurors."); *United States v. Ray*, No. 20 Cr. 110 (LJL) (S.D.N.Y. Jan. 6, 2022) (Dkt. 290 at 4) (a juror questionnaire would not be "appropriate" and that "the way to ensure a fair and impartial jury for every party is to conduct oral *voir dire* and not to use a jury questionnaire."); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 5, 2021) (Dkt. 275 at 13) (denying defense request for written questionnaire, finding that "questioning the potential jurors in person is more reliable and efficient"); *United States v. Smith*, No. 13 Cr. 297 (KMK) (S.D.N.Y. Dec. 18, 2014) (minute entry denying motion for questionnaire in criminal trial of former State Senate Leader Malcolm Smith).  This case is no different.

Accordingly, the Court should exercise its sound discretion to deny the defendants' request for a juror questionnaire.  Any speculative benefits to a juror questionnaire would be substantially outweighed by the undeniable and unnecessary costs, including material inefficiencies in pretrial preparation and a prolonged jury selection process.

### III.    Conclusion

For the foregoing reasons, the defendants' request for a juror questionnaire should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    /s
Kaiya Arroyo
Elizabeth A. Espinosa
Andrew Jones
Madison Reddick Smyser
Assistant United States Attorneys
(212) 637-2226/-2216/-2249/-2381

cc: All defense counsel