```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/13/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
            -against-                                          :   24-CR-676 (VEC)
                                                               :
ALON ALEXANDER, OREN ALEXANDER, and                            :   OPINION AND ORDER
TAL ALEXANDER,                                                 :
                                                               :
                                    Defendants.                :
                                                               :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        The Government has charged Defendants with conspiracy to commit sex trafficking, sex trafficking, inducement to travel to engage in unlawful sexual activity, and aggravated sexual abuse.  *See* S3 Superseding Indictment, Dkt. 86 ("Indictment").  Defendants moved to dismiss the Indictment and to suppress evidence obtained from search warrants, as well as for various other forms of relief.  On October 17, 2025, the Court granted, in part, and denied, in part, Defendants' motions to dismiss.  *See* Opinion and Order, Dkt. 183 ("Opinion").[1]  The Court denied each of Defendants' other motions, with two exceptions: the Court reserved judgment on (1) Defendants' request for an evidentiary hearing to address purposed violations of the attorney-client privilege related to the Government's seizure of certain digital communications, *see* Def. Mem., Dkt. 103; and (2) Defendants' request for a *Wade* hearing to determine whether in-court identifications of Defendants should be precluded, *see* Def. Mem., Dkt. 113-1, at 27–30; Def. Mem., Dkt. 119, at 1–2.  In the Opinion, the Court directed the Government to produce the contested privileged material for *in camera* review and to provide additional information

---

[1]     The Opinion was initially provided to the parties under seal pursuant to the Court's sealing procedures.  *See* Opinion at 1 n.1.  The Opinion was filed, with redactions, on the public docket on November 12, 2025.

regarding certain out-of-court identifications so that the Court could adequately assess Defendants' requests. Opinion at 1, 38–40, 42–43.

On October 31, 2025, the Government submitted a letter reiterating its opposition to Defendants' outstanding requests and produced the additional information ordered to be produced by the Court. *See* Dkt. 169. Appended to the Government's letter were declarations from Ms. Elizabeth A. Espinosa, *see* Dkt. 169-1 ("Espinosa Decl."), and Ms. Molly Canick, *see* Dkt. 169-2 ("Canick Decl."), each describing the robust procedures implemented by the Government to ensure that potentially privileged materials collected during searches of Defendants' electronic devices and data were screened and removed before being provided to the Case Team[2] that is responsible for investigating, charging, and trying Defendants.[3] As to the second outstanding motion, a declaration from Ms. Justine Atwood, Special Agent with the Federal Bureau of Investigation, identified which of the Government's potential witnesses were shown the Suggestive Photobooks and described how the Suggestive Photobooks were used during each witness's interview with law enforcement. *See* Dkt. 169-3 ("Atwood Decl."). Defendants submitted a letter responding to the Government's supplemental materials on November 7, 2025, *see* Dkt. 179, arguing that the Court should suppress in-court identifications of Defendants from witnesses who were shown the Suggestive Photobooks or, in the alternative, should conduct a *Wade* hearing to determine whether certain in-court identifications from those witnesses would be independently reliable.

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Opinion, *see* Dkt. 183.

[3] In addition to the Espinosa and Canick declarations, the Government provided for *in camera* review a set of 637 screenshots and photos that constituted the full contents of the purportedly privileged "Case File."

2

For the reasons set forth herein, Defendants' requests for (1) an evidentiary hearing regarding the Government's seizure of allegedly attorney-client privileged materials and (2) a *Wade* hearing regarding the in-court identifications of Defendants, are DENIED.

## I. Defendants' Motion for an Evidentiary Hearing Based on Alleged Violations of Attorney-Client Privilege

Having reviewed and considered the supplemental materials provided by the Government, the Court sees no reason to conduct an evidentiary hearing on this issue. As a threshold matter, there is virtually nothing in the 637 screenshots and photos provided by the Government that can be accurately characterized as privileged.[4] But even assuming, *arguendo*, that some of the material is protected by the attorney-client privilege, it is clear from the declarations of Ms. Espinosa and Ms. Canick that the Government employed a litany of safeguards to ensure that privileged information did not pass from the Filter Team to the Case Team. Indeed, it is not clear that anyone on the Case Team, other than Ms. Espinosa and a single case analyst who was promptly identified and removed, ever viewed or discussed the materials that serve as the basis of Defendants' motion. *See* Canick Decl. ¶ 17; Espinosa Decl. ¶¶ 6–10, 16–17. In short, the Government's supplemental submissions confirm that any alleged intrusion of the attorney-client privilege was unintentional, wholly non-prejudicial, and not "manifestly and avowedly corrupt." *United States v. Tournant*, No. 22-CR-276-LTS, 2023 WL 5276776, at *13 (S.D.N.Y. Aug. 15, 2023) (quoting *United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991)). Defendants' motion for an evidentiary hearing is, therefore, denied.

---

[4] While a few of the images in the subject electronic file appear to relate to legal issues facing the Defendants, mere reference to legal issues or the existence of public lawsuits does not transform those documents into privileged materials. Moreover, some documents in the file appear completely unrelated to the Defendants' legal problems (*e.g.*, photographs of political figures, photographs from a political convention), undercutting the assertion that the file was created and maintained as a conduit between Alon Alexander and attorneys representing him. Finally, Defendants have yet to produce competent evidence to support their assertion that Alon Alexander was collecting materials in the subject electronic file for transmission to an attorney for purpose of preparation of a defense. *See* Opinion at 43 n.26.

II.     **Defendants' Motion for a *Wade* Hearing**

Defendants previously argued that a *Wade* hearing is required to determine whether pretrial identifications of Defendants were the result of unduly suggestive identification procedures such that in-court identifications should be precluded. Def. Mem., Dkt. 113-1, at 27–30; Def. Mem., Dkt. 119, at 1–2; Gov't Mem., Dkt. 121, at 88–93. In the Opinion, the Court found that photobooks that included a professionally staged photograph of the three Defendants together in a single photograph were unduly suggestive. Opinion at 39. As such, in order to assess whether any in-court identification from a witness who was shown a Suggestive Photobook would be independently reliable, the Court directed the Government to "provide a declaration indicating which witnesses who are expected to make an in-court identification of a Defendant were shown any of the Suggestive Photobooks" and "provide as to each such witness: his or her opportunity to observe the person at the time of the crime; his or her degree of attention at the time of the crime; his or her certainty of identification; and the length of time between the crime and identification." Opinion at 40.

The Government's declaration indicates that up to five witnesses who were shown the Suggestive Photobooks may be asked to identify one or more of the Defendants at trial. Atwood Decl. ¶ 3. The declaration also details the process the Government used during its interviews and describes how the Suggestive Photobooks were shown to each witness. *See* Atwood Decl. ¶¶ 4–23. Although the Government's letter outlines various indicia of reliability, Dkt. 169, at 3–4, by far the most salient fact for the present analysis is that each witness had identified (or not) Defendants by name in the Suggestive Photobook *before* they were shown the professionally staged photo of the three Defendants. Atwood Decl. ¶¶ 4, 7, 11, 15, 19, 23. In other words, the witnesses were shown the unduly suggestive photograph only *after* they had already viewed and

4

identified (or, failed to identify) Defendants in their individual photographs, which were presented to the witnesses more than a dozen photos before the group photograph. *Id.* It is clear, then, that the group photograph had absolutely no bearing on the witness' initial identification of Defendants from each of Defendants' individual headshots.

The Government's arguments that tend to suggest reliability (including, for example, "the interactions the victims had with their attackers, the opportunities they had to observe them, [and] the [witness'] certain and unwavering identification of their attackers by name," *see* Dkt. 169, at 4), and Defendants' arguments to the contrary (namely, that identification is unreliable given the time that has passed and/or the witness' state of inebriation at the time of the alleged assault, *see* Dkt. 179, at 2–5), go to the weight of the evidence, not to whether the identification is admissible in the first instance. As the Government correctly observes, Dkt. 169, at 4, Defendants will have the opportunity to test the witness's in-court identifications "through the time-honored process of cross examination." *United States v. Gershman*, 31 F.4th 80, 93 (2d Cir. 2022). The jury may or may not be persuaded by the cross-examination to discredit the identification, but the identifications are admissible.

Finally, Defendants' argument that the Court should view some of the witnesses' photobook identifications with skepticism because various witnesses are represented by the same civil attorney is meritless. *See* Dkt. 179, at 5. Beyond unfounded speculation as to the "potential influence" that attorney may have had on his clients, *id.*, Defendants have provided no substantive reason for the Court to infer that the attorney acted improperly in his representation of the witnesses or that he somehow tainted any witness' identification of Defendants.

Defendants' motion for a *Wade* hearing is denied. The Government's witnesses are permitted to identify Defendants in court.

      The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 100.

**SO ORDERED.**

Date: November 13, 2025
New York, NY

                                            **VALERIE CAPRONI**
                                            **United States District Judge**