

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 27, 2026

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    ***United States v. Alon Alexander, Oren Alexander, and Tal Alexander,***
              **S6 24 Cr. 676 (VEC)**

Dear Judge Caproni:

      The Government respectfully writes to identify three evidentiary issues in advance of the start of the Government's case-in-chief. On January 26, 2026, the Government and defense counsel conferred on multiple outstanding procedural issues. While the parties reached agreement on several matters, we have been unable to reach a resolution on a series of matters related to Victim-12, who is expected to be the Government's first or second witness.[1] First, the Government moves to preclude cross-examination regarding the Israel-Gaza war. Second, the Government moves to allow limited testimony from Victim-12 regarding her decision not to disclose her sexual assault to law enforcement. Third, the Government moves to preclude certain defense exhibits related to the testimony of Victim-12. Finally, the Government requests that the Court admit one Government Exhibit over the defendants' Rule 106 objection.

      The Government expects that Victim-12 will testify about that she met Alon and Tal Alexander at an NBA Finals watch party at a celebrity's apartment in Manhattan on June 21, 2012. After the defendants gave Victim-12 alcohol and drugs at the apartment and a club, Victim-12 felt like she was losing control of her body, and her memory went black. When Victim-12 regained consciousness, she found Alon standing over her naked. Victim-12 told Alon she did not want to have sex with him, and he laughed and said she already had. He then raped her again, as she cried and told him no. Following the rape, Victim-12 disclosed what had happened to, among others, her boyfriend at the time ("Boyfriend-1") and one of her male friends ("Friend-1").

---

[1] The Government expects to call a law enforcement agent to testify prior to Victim-12, but that agent is experiencing travel issues relating to the recent storm. In the event the agent is not able to fly in by tomorrow morning, the Government expects to call Victim-12 as its first witness.

**Cross-Examination Regarding Victim-12's Statements about the Israel-Gaza War**

The Government moves to preclude cross-examination of Victim-12[2] about her political opinions regarding the Israel-Gaza War as irrelevant and unduly prejudicial. Fed. R. Evid. 401, 403. As part of its obligations under the Jencks Act, the Government disclosed notes of a meeting with Victim-12 in which Victim-12, when asked directly if she posted about political issues online, told the Government that she has previously reposted information on social media platforms about the Israel-Gaza conflict. 3541-027 at 2 (noting that Victim-12 had reposted about the "genocide" in Israel). During a meet and confer, defense counsel informed the Government that they intend to cross examine Victim-12 about these posts, claiming that such questioning is relevant to her potential bias against the defendants.

Victim-12's limited statements about the conduct of a war that is one of the most hotly contested geopolitical issues of the past few years are not relevant in this case and are not a proxy for antisemitism. As to Court recently noted, opinions about the Israel-Gaza war, even ones that are critical of Israel are, "different from being antisemitic and [are] different from having any ill feelings about these three men who are clearly not fighting in the Israeli Army." (Trial Tr., 1/20/26, at 16; *see also id.* at 15-19 (the Court rejecting a defense request for a voir dire question asking prospective jurors whether they have "expressed opinions about or posted about Israel," and stating, "No. It's not relevant")). Victim-12 will testify primarily about events that happened in 2012—over a decade before the start of the conflict in Gaza— which she disclosed to numerous individuals, including in writing, shortly after they occurred. She has not expressed any bias towards individuals of Israeli descent or Jewish heritage, and the Government is not aware of any such bias. Any cross-examination on this issue would, rather than eliciting any bias from a testifying witness, introduce an issue about the defendants' ethnicity, nationality, or religion—an issue that would both waste time and confuse the jury about the actual questions in this case. Accordingly, the Court should preclude cross-examination of Victim-12 on this topic.

**Testimony Regarding Victim-12's Decision Not to Disclose Her Assault to Law Enforcement**

Second, the Government anticipates that the defendants will move to preclude testimony from Victim-12 about a blog post that Victim-12 saw shortly after she was assaulted by Alon and that influenced Victim-12's decision not to disclose the assault to law enforcement. For the reasons below, the Court should allow limited testimony on this topic.

The Government expects that the defendants will attack Victim-12's credibility, including by cross-examining her on the fact that she did not report the assault to law enforcement or obtain a drug test. In anticipation of that line of cross, the Government expects to elicit testimony from Victim-12 about why she did not disclose to law enforcement or obtain a drug test. Victim-12 will testify that, less than a week after being assaulted by Alon Alexander, she found a blog post about Alon and Oren Alexander on the internet. She recalls that the blog (1) stated that Alon and Oren Alexander had been accused of drugging and raping a 15-year-old girl together, which resulted in bruises to the girl, and (2) appeared to be an informal account. Victim-12 will further testify that

---

[2] While this letter focuses specifically on Victim-12, the Government generally objects to cross-examination about this geopolitical topic.

she sent a link to the blog post to at least three friends and tried to find more information about allegations contained in the blog post. Victim-12 was unable to find more information, which led her to believe that Alon and Oren Alexander may have done this before and appeared to have been able to get information about the prior incident wiped from the internet. This discouraged her from contacting law enforcement or obtaining a drug test (an exercise she viewed as futile given the apparent power of the defendants).

If the defendants intend to cross-examine Victim-12 about her choice to not report the assault to law enforcement or obtain a drug test, Victim-12 must be given an opportunity to explain her actions to the jury. Defense counsel has stated to the Government that the testimony is unduly prejudicial because the post in question falsely stated the defendants were tried and acquitted of an assault, that the article was removed from its hosting platform pursuant to a court order, and that information related to the rape of a 15-year-old by the defendants would unduly inflame the passions of the jury. Setting aside for the moment that the defendants have provided no evidence in support of their claims, the truth of the article is not relevant to the effect that the article had on Victim-12's decision not to report the assault. For avoidance of doubt, the Government does not intend to elicit information about the blog for its truth and has offered to limit Victim-12's testimony to a generic description of the post (*i.e.*, that it involved a prior allegation of sexual assault and drugging on the part of the brothers) that does not identify the age of the victim or elicit that the blog said that the defendants were criminally charged for that assault.[3] Moreover, with respect to undue prejudice, the post's allegations are no more prejudicial than the charges that while be adduced at trial, which include allegations of sexual assault by multiple assailants, allegations of sexual assaults of minors, and allegations of forcible rapes. Accordingly, the Court should allow this testimony absent an agreement by the defendants not to cross-examine Victim-12 on her delayed disclosure to law enforcement or failure to obtain a drug test.

### **Defense Exhibits**

The Court should preclude the defense's use of the proposed defense exhibits for Victim-12. As an initial matter, the Court should preclude these exhibits because the defendant's disclosure of them was untimely. The Government disclosed last Friday that Victim-12 would be testifying the first day of trial. Although the Court ordered the defense to disclose exhibits it intends to offer as substantive evidence by January 7, 2026 (or at the latest, January 9, 2026 for Alon Alexander), and impeachment exhibits by "the day after [the defense] finds out the witnesses," *i.e.*, Saturday, the defense failed to provide the full set of these exhibits until after 5 PM on January 26, 2026—the day before Victim-12 is expected to testify.[4] (Tr. 831). The Government requested these exhibits multiple times over the weekend, as well as on the morning of January 26.

---

[3] Indeed, Victim-12 has not indicated that she recalls reading that information.

[4] All of the defense exhibits outlined below were disclosed after 5 PM on January 26, 2026, aside from DX 3008, which was produced on Sunday. The Government understands that there may be occasions where limited exhibits are disclosed after the deadline, but a good-faith effort to comply with the deadlines must be made to give the parties time to effectively confer on issues and to prevent gamesmanship.

In addition, the defense has not provided with the Government with sufficient context regarding the exhibits to allow for efficient resolution of issues. Despite the late notice, the Government promptly informed the defense of its objections to their exhibits, but has not heard back from the defense as to their responses to certain relevance and hearsay objections. Given that Victim-12 will testify today and the Government requires rulings on these issues before her testimony, the Government must raise its objections with the Court without the benefit of a meaningful conferral with the defense.

The Court should accordingly preclude the defense from using the below exhibits based on this untimely disclosure, and to order the defense to comply with the order that it provide all substantive exhibits now and all impeachment exhibits the day after the defense learns the timing of a Government witness. Such untimely disclosure makes it difficult—if not impossible—for the parties to productively confer and work out evidentiary issues related to witnesses to ensure this trial runs smoothly and does not waste the jury's time.

### *DX 3010 and 3011: July 13, 2012 Messages with Boyfriend-1 and Friend-1*

DX 3010 and 3011 are Victim-12's Facebook messages with Boyfriend-1 and Friend-1 from July 13, 2012, approximately three weeks after Alon Alexander raped Victim-12. The Government objects on hearsay, Rule 401, and Rule 403 grounds.

In these messages, Victim-12 details what occurred the prior night. That night, she saw Tal Alexander at an event for her work, and afterward, went out with her friends. One of the friends ("Friend-2") gave her a hard time about not being fun anymore or going out with them. This upset Victim-12, who had been affected by the rape for those intervening weeks. Victim-12 became intoxicated and then confided in Friend-2 that she had been raped. Friend-2, who was also intoxicated, did not believe her, which greatly upset Victim-12.

The Government expects that Victim-12 will testify about this night, but her messages detailing it are inadmissible hearsay grounds. These are backward looking statements that describe Victim-12's drinking the night before and her fight with Friend-2. The defense has identified no hearsay exception, and they should be precluded on that basis. In addition, the defense has not articulated the relevance of these messages. To the extent the defendants intend to use them to show that Victim-12 drank on a particular occasion after the rape, they are not relevant and are prejudicial and should be precluded on Rule 401 and 403 grounds.

### *DX 3012: June 21, 2012 Messages with Friend-1*

DX 3012 are a selection of Victim-12's Facebook messages with Friend-1 on June 21, 2012, before she went to the apartment where she met Alon and Tal Alexander. The Government objects on hearsay, Rule 401, Rule 403, and Rule 412 grounds.

In these messages, Victim-12 and Friend-1 do not discuss anything related to the events that are the subject of Victim-12's testimony. Indeed, Victim-12 had not even been invited to the relevant party yet at the time of the texts. In the beginning of this text chain, which starts at 11:32 AM—many hours before Victim-12 went to the party—Friend-1 asks Victim-12, "how was drinking wit da boss," to which Victim-12 responds, among other things, "twas great fun." To the extent these text messages are being offered for their truth, the Government objects on hearsay

grounds, and the defense has identified no hearsay exception under which they fall. In addition, the Government objects on relevance grounds and under Rule 403—whatever experience Victim-12 had drinking with her boss over 12 hours prior to the rape is not relevant to the charges at hand and is only prejudicial and confusing to the jury.

The text chain continues with banter between Friend-1 and Victim-12, including texts in which Victim-12 conveys that she is sick.  These texts, are not relevant to Victim-12's interactions with the defendants and are prejudicial to Victim-12, and should be precluded on that basis. In addition, the Government objects on Rule 412 grounds, If the Court is considering admitting these messages, it should hold a Rule 412 hearing.

### *DX 3013: June 22, 2012 Messages with Boyfriend-1*

DX 3013 is one Facebook message from Victim-12 to Boyfriend-1 on June 22, 2012—the day after the rape—at approximately 1:26 PM In this message, Victim-12 tells Boyfriend-1, "you're online!!!!" and Boyfriend-1 does not respond. The defendants have not proffered the relevance of this message, and the Government therefore objects on relevance and hearsay grounds.

### *DX 3008: Photographs from the Early Morning Hours of June 22, 2012*

DX 3008 contains four photographs of Alon Alexander and a woman ("Woman-1") at a club, in the early morning hours of June 22, 2012, prior to the rape of Victim-12. The Government has asked the defendants to proffer the relevance of this exhibit but has not yet received an answer. Multiple of these photographs feature Alon and Woman-1 in romantic poses, including a photograph in which Woman-1's arm is around Alon and Alon's tongue appears to be touching Woman-1's cheek. The Government objects to these photographs as improper good acts evidence, showing Alon Alexander in what appears to be consensual sexualized poses with Woman-1. They should be precluded under Rule 403, as the jury may improperly infer that because Woman-1 appeared to be enjoying her time with Alon, Alon could not have raped Victim-12 later than night. In addition, the relevance of these photographs—to the extent it exists—is further limited because Victim-12 does not recognize Woman-1.

To the extent the defendants seek to use the photographs and their metadata to establish a timeline of the night, the Government does not object to the admission of the fourth photograph, which is marked as DX 3008-4. This photograph features Alon Alexander dancing next to Woman-1, but not in a romantic embrace. In addition, this photograph is more relevant to the charges at hand than the others, as Victim-12's friend, who went to the watch party with her, can be seen in the background. According to the metadata, that was the last photograph taken that night, at approximately 1:59 AM, and would serve the purpose of establishing the timeline.

## Government Exhibit 1K-103

GX 1K-103 is a series of Facebook messages between Victim-12 and Friend-1 on June 22, 2012, the morning after the rape, in which Victim-12 discloses to Friend-1 what had happened to her the night before. The Government provided a proposed version of this exhibit, which began with a question from Friend-1 to Victim-12 related to her changing her profile picture that morning (proposed GX 1K-103, pg. 2: "did u just change ur pic back?"). The Government expects that Victim-12 will testify that the morning after the rape, Victim-12 changed her Facebook profile picture to a photograph of her and a friend at the watch party, hours before Victim-12 was raped by Alon Alexander. Shortly thereafter, she changed the profile picture again.

The defendants raised a rule of completeness objection and asked the Government to include Facebook messages between the two earlier that morning about the topic of Victim-12's profile picture. The Government has no issue in doing so, but objects to messages in the middle of the communication between Friend-1 and Victim-12 that do not relate to the profile picture and ███████████████████████████████████████████████████████████ The Government proposed redactions to this exhibit to excise these irrelevant and prejudicial messages, but the defendants have not provided their position on such redactions. (*See* proposed GX 1K-103, pgs. 1-2, which redboxes and proposes redactions from Friend-1's message: "ur so cool" to Victim-12's message: "itll be over soon!!!"). Between these proposed redactions, ███████████ ██████████████████████████████████████████████████████████████████████████ The Government objects under Rules 401 and 412 to these messages coming into evidence, ██████ ████████████████████████████████████████████████████████████████████████ As with DX 3012, prior to admitting these messages, the Government respectfully requests the Court hold a hearing as required under Rule 412.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s_____
    Kaiya Arroyo, Elizabeth A. Espinosa
    Andrew Jones, Madison Reddick Smyser
    Assistant United States Attorneys
    (212) 637-2226/-2216/-2249/-2381