

|  |  |
|---|---|
| 17 State Street<br>39th Floor<br>New York, NY 10004 | ATTORNEYS AT LAW<br>EVAN TORGAN<br>EDWARD T. COOPER<br>MITCHELL K. AARON |
| Office 212·232·2500<br>Fax 212·232·2509 | JONATHAN TABAR<br>BRENDAN BROWN |
| TorganCooperAaron.com | MITCHELL R. DRACH<br>Of Counsel |

February 5, 2026

**VIA ECF – REDACTED**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:  *United States v. Alexander et al.*, Docket No. 24-CR-00676 (VEC)
> Motion to Quash Rule 17(c) Subpoenas on behalf of Victim 2

Your Honor:

We represent Victim 2 in the above-captioned matter and respectfully submit this letter motion seeking to quash a subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c) ("Rule 17"), which was served on Tuesday, February 3, 2026, at 9:03 p.m. and is returnable on February 5, 2026. *See* **Exhibit A**. As fully set out below, the Rule 17 subpoena seeks production of a document that was prepared in the context of the attorney-client relationship, constitutes attorney work-product, and is fully protected by the attorney-client privilege. Accordingly, the subpoena should be quashed by the Court pursuant to *U.S. v. Nixon*, 418 U.S. 683 (1974).

More particularly, the subject Rule 17 subpoena served by defense counsel following the conclusion of the cross-examination of Victim 2, demands production of a document referred to as "Detailed Timeline.docx." (the "document"). Although during her lengthy cross-examination, and in response to a series of rapid leading questions, Victim 2 indicated that the document had been provided to the United States Attorney's Office, that testimony was simply mistaken and solely reflects a misunderstanding by the witness of what materials had actually been transmitted to the Government by counsel. The document was never produced to the Government, and the Assistant United States Attorneys ("AUSA") have confirmed that the Government does not possess, nor have ever reviewed this document. Accordingly, immediately following the colloquy, the AUSA accurately represented to the Court that the Government does not have any such document and has never received it.

| TORGAN, COOPER + AARON, P.C. |

## I. THE SUBPOENA FAILS THE ADMISSIBILITY PRONG OF *NIXON* BECAUSE THE DOCUMENT CONSTITUTES ATTORNEY WORK-PRODUCT AND IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Beginning in June 2024, Victim 2 contacted our firm seeking legal advice regarding matters that later became the subject of this prosecution. During that same period, Victim 2 was also consulting with another attorney, Ira Meyerowitz, Esq., who was communicating with our firm regarding possible joint representation. Attached hereto as **Exhibit B** is a Declaration in support of the instant Letter Motion by Mr. Meyerowitz.

As set out in his Declaration, Mr. Meyerowitz confirms that in or about June 2024, Victim 2 contacted him "for the purpose of seeking representation and legal advice concerning potential civil claims arising from the events that are now the subject of this criminal prosecution." *See Ex. B, Meyerowitz Dec. ¶ 3.* Mr. Meyerowitz explains the origins of the subject document stating in part: "In the course of those confidential consultations, I requested that Victim 2 assist me in the preparation of a document to organize her recollection of the relevant events so that I could better provide legal advice to her. Accordingly, on July 24, 2024, I created a document, in collaboration with Victim 2, titled "Detailed Timeline.docx." (the "Document") which is now the subject of the February 3, 2026, subpoena." *See Ex B, Meyerowitz Dec. ¶ 5.*

In his Declaration, Mr. Meyerowitz confirms that he created the document, "with Victim 2's assistance, in the context of an ongoing attorney-client relationship as a tool to facilitate legal analysis, evaluate potential claims, and enable counsel to render advice in anticipation of litigation." *See Ex. B, Meyerowitz Dec. ¶ 6.*

On August 22 and 23, 2024, our firm met with Victim 2, and on August 25, 2024, a written joint representation agreement was entered into between our firm, Mr. Meyerowitz and Victim 2. Subsequently, on August 26, 2024, our firm transmitted corroborating materials to the United States Attorney's Office. The document was withheld as privileged attorney work-product and not included in the transmission to the Government.

As also confirmed by Mr. Meyerowitz in his Declaration, "[t]he Document has always been treated as confidential attorney work-product and maintained exclusively within counsel's files and secure case-management systems. The document was never provided to the United States Attorney's Office or to any other representative of the Government." *See Ex B, Meyerowitz Dec. ¶¶ 7-8.*

It is worth noting that during cross-examination on February 3, 2026, Victim 2 similarly confirmed that the document was created after she began consulting with counsel and within the context of seeking legal advice. More particularly, Victim 2 was asked when she created the document and responded that it was "shortly after I contacted the civil attorneys."

| TORGAN, COOPER + AARON, P.C. |

The attorney-client privilege is one of the oldest recognized privileges for confidential communications and is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swindler & Berlin*, 524 U.S. 399, 403 (1998).  "The broad outlines of the attorney-client privilege are clear: '(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.'" *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997), quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1983). Here, the protections created by the privilege have not been waived.

Under *United States v. Nixon*, 418 U.S. 683, 700 (1974), a Rule 17(c) subpoena may issue only for materials that are: (1) relevant; (2) admissible; and (3) specifically identified. Rule 17(c) providing for subpoena for documents, may be used only to obtain materials which are themselves admissible evidence. *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995). In this instance, because the subpoena seeks a document that is categorically inadmissible under the attorney–client privilege and work-product doctrine, it fails the admissibility requirement of *United States v. Nixon*, supra. The subpoena seeks what Rule 17(c) cannot reach: counsel's internal work product that the Government has never possessed and that could not be introduced at trial. Compliance would therefore be unreasonable and oppressive within the meaning of Rule 17(c)(2), and the subpoena must be quashed.

**A.  The Document Was Created In Anticipation of Litigation.**

As set out by Mr. Meyerowitz in his Declaration, the document was created  "in the context of an ongoing attorney-client relationship as a tool to facilitate legal analysis, evaluate potential claims, and enable counsel to render advice in anticipation of litigation." *See Ex. B, Meyerowitz Dec. ¶ 6.*

In support of their request for production, the defense appears to rely on a single exchange during the cross-examination of Victim 2 in which counsel asked the witness whether the document was created "in preparation for litigation."  It is unsurprising that a lay witness would give an incorrect answer while on the stand to a question that incorporates a legal term of art that even courts routinely need to construe through motion practice. The law, however, does not condition privilege on a non-lawyer's ability to recite doctrinal phrases. Indeed, throughout the course of Victim 2's cross examination she repeatedly explained that she is not well versed in the legal system. Privilege is determined by objective purpose and context, not by the witness's semantics. Were the rule otherwise, the attorney–client privilege would dissolve whenever a cross-examiner embedded legal jargon in a leading question.

| TORGAN, COOPER + AARON, P.C. |

Whether a document was created "in anticipation of litigation" is a legal conclusion, not ordinary speech. Courts in this Circuit look to whether the communication was made for the purpose of obtaining legal advice, not how the client labels it. *Freedman v. Rakosi*, 674 F.Supp.3d 105, 113 (S.D.N.Y. 2023) (privilege protects communications made for obtaining legal assistance).

In *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009), this District held that attorney-client privilege protected client communications even without formal engagement. The decision established that privilege attached when clients reasonably believe they are seeking confidential legal advice, regardless of whether a retainer agreement was signed. *See also Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 803 (S.D.N.Y. 1991) (privilege applies where client believed she was approaching attorney for legal advice); *Diversified Group, Inc. v. Daugerdas*, 304 F.Supp.2d 507, 513 (S.D.N.Y. 2003).

Here, Victim 2 testified that the document was created "shortly after [she] contacted the civil attorneys." That is the dispositive, legally relevant fact. The Court should reject an approach that would permit core protections to be defeated by semantics rather than substance. The objective reality is that the document was created by counsel during joint consultation following initial discussions about litigation prospects. The Second Circuit recognizes that the common-interest doctrine is "an extension of the attorney-client privilege" that protects communications generated in the course of coordinated legal consultation among counsel and their shared client. *United States v. Krug*, 868 F.3d 82, 86–87 (2d Cir. 2017). These circumstances establish a reasonable expectation of confidentiality and the seeking of legal advice, the very conditions that create privilege.

### B. The Document is Core Opinion Work Product and Therefore Inadmissible

The Second Circuit's seminal decision in *U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), confirms that materials are protected when they are prepared because of anticipated litigation, even if they also serve additional purposes. The Court held that "a document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation," and that such a document is protected where it "would not have been prepared in substantially similar form but for the prospect of that litigation." *Id.* at 1195, 1202

*Adlman* further emphasized that materials revealing an attorney's "mental impressions, conclusions, opinions or legal theories" occupy "the most protected category of work product," which may be overcome only by a highly persuasive showing of necessity. *Id.* at 1204. The document sought here is precisely that: a lawyer-prepared document reflecting counsel's organization of facts and legal framing in aid of representation. Such opinion work product is not admissible evidence and therefore cannot satisfy the admissibility requirement of *Nixon*. The defense has made no showing, let alone the extraordinary showing required under *Adlman*, that would justify piercing this core protection.

4

| TORGAN, COOPER + AARON, P.C. |

As set out above, and in the accompanying Declaration of Mr. Meyerowitz, the document was created by counsel, with the client's assistance, after the client sought legal representation, in the course of ongoing consultations and legal advice, was uploaded to counsel's files and was never disclosed to the Government or any other third party. Those circumstances are the touchstones of attorney–client privilege and work-product protection. Because the document was prepared because of anticipated litigation and embodies counsel's mental impressions, it is categorically inadmissible and beyond the reach of Rule 17(c).

### C. There Has Been No Waiver of the Privilege

No waiver occurred. The document was never produced to the Government; the Government has confirmed it does not possess it; and the only basis for the subject subpoena was a mistaken answer elicited during the cross-examination of Victim 2. Waiver requires actual disclosure of privileged content and conduct demonstrating unreasonable disregard for confidentiality. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 443 (S.D.N.Y. 1995); *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *SEC v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y. 1999). Where the document itself remains confidential, mistaken testimony cannot constitute waiver.

The Second Circuit follows an intermediate, circumstance-specific approach to waiver that protects against inadvertent disclosure. In *Bank Brussels*, the court identified five factors guiding the analysis: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify any error, (3) the scope of discovery, (4) the extent of the disclosure, and (5) overriding issues of fairness." 160 F.R.D. at 443. Privilege is lost only when the party "failed to take reasonable steps to maintain [the document's] confidentiality." *Id.* None of those factors supports waiver here. Counsel affirmatively withheld the document from the Government, produced only non-privileged corroborating materials, and immediately clarified on the record that the document had never been exchanged.

The only basis the defense had for asking about the document was a screenshot among other materials in which the document's title appeared in a browser tab. That image revealed nothing of the document's substance, no text, no narrative, and no attorney impressions. The mere visibility of a file name is not a disclosure of a privileged communication; it establishes, at most, the document's existence. Waiver requires revelation of content, not the incidental appearance of a label. Under the "extent of disclosure" factor of *Bank Brussels*, the absence of any substantive disclosure weighs decisively against waiver.

In the accompanying Declaration, Mr. Meyerowitz states in part, "I have never authorized the disclosure of the Document to any third party, and to my knowledge no such disclosure was ever authorized by the client." *See Ex. B, Meyerowitz Dec. ¶ 8.*

| TORGAN, COOPER + AARON, P.C. |

The Second Circuit in *In re Grand Jury Proceedings* emphasized that although waiver may occur without intentional relinquishment, "this does not mean that all inadvertent disclosures mandate a finding of waiver." 219 F.3d at 182. Most waiver cases involve carelessness in the document production process, requiring careful examination of the circumstances. *Id.* This case presents the opposite scenario – there was no disclosure at all, inadvertent or otherwise. A witness's misunderstanding about what counsel provided cannot be equated with negligent production that undermines privilege. *SEC v. Cassano* confirms that inadvertent production waives privilege only when the party's conduct was "so careless as to suggest that it was not concerned with the protection of the asserted privilege." 189 F.R.D. at 85. Counsel's conduct here demonstrates the opposite. The document was segregated within counsel's files, deliberately excluded from the Government production, and its privileged status was asserted immediately once the mistaken testimony occurred.

Accordingly, under the Second Circuit's circumstance-specific approach, there has been no waiver as a matter of law. The absence of any actual disclosure, coupled with reasonable precautions and prompt clarification, forecloses the defense theory and leaves the document fully protected.

## II. CONCLUSION

Rule 17(c) may not be used to obtain materials that are shielded by the attorney–client privilege or the work-product doctrine. Courts in this District have consistently rejected efforts to deploy Rule 17(c) as a back-door mechanism to obtain privileged communications that would be unavailable through any other procedural avenue. See *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).

The subpoena here seeks precisely what Rule 17(c) forbids: counsel's internal work product that the Government has never possessed and that could not be introduced at trial without violating core privileges. Moreover, the subpoena was served mid-trial with an immediate return date, amplifying its oppressive character under Rule 17(c)(2). Permitting such use of Rule 17(c) would invert the limited function of the Rule and erode protections that are essential to the administration of justice. Victims and witnesses must be able to consult with counsel and seek legal advice without fear that those communications will be compelled to be disclosed by the very defendants against whom they may testify.

In sum, as set out above, the document sought by the defense was created within the context of the attorney-client relationship, constitutes attorney work-product, and is protected by the attorney-client privilege. Because it is not admissible evidence, the subpoena fails the threshold requirement of *United States v. Nixon* and cannot be enforced under Rule 17(c). No waiver has occurred, and the incidental appearance of a file name in a screenshot does not transform counsel's work product into discoverable material. For these reasons, Victim 2 respectfully requests that the Court quash the February 3, 2026, Rule 17(c) subpoena in its entirety.

TORGAN, COOPER + AARON, P.C.

Respectfully submitted,

TORGAN COOPER & AARON, P.C.

By: _/s/ Evan Torgan_____
            Evan Torgan
            Jonathan Tabar

cc: All counsel (via ECF)

7