# AGNIFILO INTRATER

February 8, 2026

**VIA ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, NY 10007

      Re:    *United States v. Alon Alexander, Oren Alexander & Tal Alexander*,
               24 Cr. 676 (VEC)

Dear Judge Caproni:

      After testifying on both direct examination and cross-examination that she was not a party to a lawsuit, was not planning to sue, and that she created a detailed document solely for herself, counsel for alleged Victim-2, Bela Koval, moved to quash a 17(c) subpoena seeking Koval's "Detailed Timeline" ("the Document") and all prior versions of it. Despite Koval's testimony to the contrary, Koval now claims that the Document is privileged. This assertion of privilege has no legal basis. First, the witness's writings "for herself" are not privileged. Second, even if they were once privileged, she has waived that privilege. Accordingly, there is no privilege that prevents the Document from being disclosed to defense counsel.

      Koval testified very clearly that she made the detailed timeline for herself. Her own lawyer now says that this was false. Koval's counsel, however, asks this Court to find that Koval's testimony was "mistaken." To try to excuse Koval's inaccurate testimony, Koval's counsel blames the defense's "rapid leading" questions. This attempt at an explanation should be rejected – it implicitly recognizes that Koval's testimony was false, but seeks to blame defense counsel. Defense counsel's questions on cross examination gave the witness plenty of opportunity to explain the document at issue here. In fact, despite defense counsel continuously asking the witness to answer "yes or no" to questions, Koval routinely gave lengthy answers. She understood what she was being asked, and answered basic questions at length, and she answered them without issue. The witness showed an absolute understanding of the questions, even asked counsel to clarify at points where she needed clarification. The issue is not the pace of defense counsel's questions. The issue is the substance of Koval's testimony.

      For the reasons set forth below, this Court should order the production of the Document, as it is relevant, identifiable, and is not privileged.

**Koval's Testimony and Relevant Background**

      During her testimony, Koval denied being part of a civil lawsuit, denied believing she could receive a monetary award from the case and denied planning legal action.

The Honorable Valerie E. Caproni
January 8, 2026
Page 2 of 7

- When asked if she was part of a civil lawsuit, Ms. Koval responded, "No." (Tr. 1247.)

- When asked if she was planning legal action when she wanted her friend Allyson Helms to speak with her civil attorney, Koval replied, "No, because I wanted her to tell the truth of what happened to us both." (Tr. 1094.)

- When asked if she believed she could get money from the case, she answered, "No." (Tr. 1394.)

- When asked if she had told the government she was unsure about whether she planned to sue, she stated, "At the time, I was unsure." (*Id.*)

When asked about what was produced to the United States Attorney's Office, Koval stated that she made the decisions as to what to turn over:

> Q. Did you make the decisions as to what to turn over to the United States Attorney's Office?
>
> A. Yes.
>
> Q. Okay. And you did that after creating a detailed timeline of the events, correct?
>
> A. I handed over everything that I could find.
>
> Q. I asked you a question as to whether you did that after creating a detailed timeline as to the events. That is my question.
>
> A. Yes. I wrote down the truth of what had happened to me, as best as I can.
>
> Q. Did you ever turn that over to the United States Attorney's Office?
>
> A. Yes.
>
> Q. You gave them a detailed——you turned over the detailed timeline?
>
> A. Yes.
>
> Q. When?
>
> A. At the very beginning.

(Tr. 1284-1285.) The testimony of the witness shows several things. First, she clearly understood what was being asked, and never expressed any issue of misapprehension. Second, she specified that she gave the document to the U.S. Attorney's Office and further specified that she did this "at

the very beginning."[1] Third, she drew a distinction between the U.S. Attorney and "civil attorneys," indicating that she knows the difference between the two. Fourth, she specified that she was the one who decided what to give to the U.S. Attorney's Office and that she decided to provide this timeline.

Koval further detailed key aspects as to the document at issue during cross-examination. The full colloquy is below:

Q. What did you include in the detailed timeline?

A. I just included what had happened to me, the truth of what happened to me that weekend.

Q. When did you create the detailed timeline?

A. It was shortly after I contacted the civil attorneys.

Q. So you created this in preparation for litigation?

A. No. It was just for me to write down everything for me to have a clear sense of what had happened to me.

Q. But does this detailed timeline say that you went inside at 2 or 3 p.m. or does this detailed timeline say that you went inside after golden hour?

A. It has approximations.

Q. And what does the approximation say?

A. I can't recall. It's——it was still light outside, and when the rape occurred, it was dark outside.

Q. I'm only asking what the detailed timeline says. That's all I'm asking. And you said you're not sure but it was——

A. I'm not sure the exact time, but I remained clear from the very beginning that there was still light outside.

Q. I'm not——

THE COURT: That's not what she's asking you. She's asking you: What did you write down on the timeline? Did you write times of things?

---

[1] Even if she did not, her answer to this question showed that her intent was to provide this document to law enforcement.

3

The Honorable Valerie E. Caproni
January 8, 2026
Page 4 of 7

>THE WITNESS: It was just approximations, around what time of day. It wasn't numerical times.
>
>THE COURT: So like afternoon, evening, like that?
>
>THE WITNESS: Yes.
>
>Q.     On this timeline, did you say that you refused to go on the boat the next day?
>
>A.     No.
>
>Q.     What did you write about the boat the next day in this timeline?
>
>A.     That I did not want to go on the boat.
>
>Q.     You didn't say refused?
>
>A.     I'm not sure.

(Tr. 1289-1290.) Following Koval's testimony, counsel stated to the Court that the defense would seek a Rule 17(c) subpoena for the Document that Koval "did not create in preparation for litigation." (Tr. 1304.) Counsel's colloquy with the Court stated that this document was "identifiable," "relevant," and "not privileged." (*Id.*) Counsel served that subpoena upon Koval's counsel, who has now moved to quash. *See* ECF 392.

**The Subpoena Does Not Request Privileged Material and It Satisfies the Relevant Standard For A Trial Subpoena**

    1.    The Document Is Not Privileged

Koval's counsel now asserts that the Document is protected by both the attorney-client and work product privileges, despite her under-oath testimony that it was created only for herself. At no point did Koval state the Document was prepared for or with her counsel. At no point did Koval state that her attorney asked her to write the Document. At no point did Koval state that she created the Document in the context of an ongoing attorney-client relationship. She had the opportunity to say all of these things. But, her testimony was clear that she wrote it for herself and gave it to the U.S. Attorney's Office. Koval's counsel cannot now retreat from the clear testimony and prevent production of a relevant, identifiable and non-privileged document.

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Because the attorney-client privilege "stands in derogation of the search for truth so essential to

The Honorable Valerie E. Caproni
January 8, 2026
Page 5 of 7

the effective operation of any system of justice . . . [it] must be narrowly construed." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). "The attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002, & Aug. 2, 2002,* 318 F.3d 379, 383 (2d Cir. 2003). "[I]t is well established that the work-product privilege does not apply" to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The party asserting either privilege bears the burden of establishing its applicability. *United States v. Correia*, 468 F. Supp. 3d 618, 621 & 624 (S.D.N.Y. 2020).

Here, Koval's counsel is now taking a position directly at odds with Koval's sworn trial testimony. The Court must first determine whether this communication was between a client and her attorney. In sworn testimony, Koval stated that it "[i]t was just for me to write down everything for me to have a clear sense of what had happened to me." This directly contradicts the declaration's statement that Mr. Meyerowitz "created a document." ECF 392, Ex. B ¶5. Koval's sworn testimony was that this document was "just for" her. At least two attorneys with Torgan Cooper & Aaron PC were in the gallery observing her testimony. At no point did they interrupt the testimony to assert the attorney-client privilege or raise this issue out of the jury's presence, and there was ample time to do so. There was a lengthy sidebar in the middle of this exact testimony, where they could have approached members of the government (prosecutors, the supervising AUSAs sitting next to them, the agents in the courtroom or court personnel). Moreover, the government did not interrupt this testimony to object as to potential privilege. The reason why the privilege issue was not timely raised is because there is no privilege issue.

Second, the communications were not intended to be *and in fact were not*, kept confidential. This also indicates the lack of a privilege. Defense counsel *and the Court* questioned Koval as to the contents of the Document, and Koval revealed substantial portions. (Tr. 1289-1290.) The broad contours of the Document were revealed in testimony without objection from the government or her counsel, who were present. Therefore, counsel's motion also fails this second prong.

As to the third prong, Koval must show that the Document was for the purpose of obtaining or providing legal advice. Koval's testimony was clear that the Document was created solely for her. Yet her counsel now states that *he* created it *in collaboration with* Koval. ECF 392, Ex. B ¶5. This Court should rest on the record before this jury, which is that Koval created it solely for herself after June of 2024. Counsel relies on *Adlman*, which clearly states that the "work-product privilege does not apply to such documents…that would have been created in essentially similar form irrespective of the litigation." 134 F.3d at 1202. Here, Koval would have created the Document irrespective of whether she was considering litigation against the defendants, because she has been a named victim in the indictment since the inception. She has gathered documents over the past year and a half, and has been meeting with the U.S. Attorney's Office to prepare her testimony.

The Honorable Valerie E. Caproni
January 8, 2026
Page 6 of 7

Accordingly, the Document is not privileged.[2]

2. The Requested Subpoena Is an Appropriate Trial Subpoena

As an initial matter, the defendants contend that the requirements outlined in *United States v. Nixon*, 418 U.S. 683 (1974), do not apply here because the requested subpoena is returnable at trial. *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021); cf. *Nixon*, 418 U.S. at 701 ("[T]he need for evidence to impeach witnesses is insufficient to require its production in advance of trial.") (emphasis added). The request is narrowly tailored to seek just a single, identifiable items of impeachment evidence and is not "unreasonable and oppressive." Fed. R. Crim. P. 17(c)(2).

But even if the Court finds that *Nixon* applies (and it respectfully should not), this Rule 17(c) subpoenas *duces tecum* identifies "specific, relevant evidence that is likely to be admissible." ECF 389 at 6. The Court has already indicated that "we have gotten to the standard" (Tr. 1304) with this request. The request is narrowly tailored to the Document and all previous iterations. It is relevant because it goes directly to Koval's testimony. It is likely to be admissible because its contents will not be hearsay—it will not be admitted for the "truth of the matter asserted." Rather, it would be admitted to show how often she has changed her story as to what happened that weekend, which is directly relevant to her credibility.

**Conclusion**

For the foregoing reasons, this Court should deny Koval's motion to quash and direct the prompt production of the Document and all prior versions of it.

Respectfully submitted,

_____
Marc Agnifilo
Zach Intrater
Teny R. Geragos

*Attorneys for Oren Alexander*

Howard Srebnick
Jackie Perczek

*Attorneys for Alon Alexander*

Milton L. Williams

---

[2] Even if the Court concludes there was privilege, Koval testified that she provided this timeline to the government. She unequivocally gave this timeline to her attorney to provide to the government (along with the other materials she gave Torgan to give the government, like the polaroids). That authorization waived any purported privilege.

<mark>

The Honorable Valerie E. Caproni
January 8, 2026
Page 7 of 7

           Alexander V. Kahn
           Deanna Paul

           *Attorneys for Tal Alexander*

cc:   All counsel (via ECF)

Case 1:24-cr-00676-VEC   Document 400   Filed 02/08/26   Page 7 of 7