

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 9, 2026

**BY EMAIL**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *United States v. Alon Alexander, Oren Alexander, and Tal Alexander,*
S6 24 Cr. 676 (VEC)

Dear Judge Caproni:

The Government respectfully writes to oppose the defendants' motion to exclude Government Exhibit 1004, a summary chart, and the exhibits referenced in the chart. As described below, the chart and the underlying evidence are direct evidence of the defendants' conspiracy to commit sex trafficking that is charged in Count One. Accordingly, the Court should admit the evidence when it is offered at trial.

*The Defendants Trafficked Women to Fyre Fest*

In April 2017, the defendants and others trafficked women to the Bahamas to attend the failed music festival Fyre Fest. The defendants and others pooled resources to transport women to the Bahamas and to rent a yacht to house themselves and the women they trafficked. Coordination for this scheme was done in large part through a group chat that Tal Alexander created and titled "Fyre Puss." (*See* GX 1004 at line 30). This chat included all three defendants and four other participants. (*Id.*) As some of the first messages in that chat make clear, the defendants' goal was to traffic women to the event for sex. As one conspirator wrote, "the girls that do not conform" would be kicked off the yacht and forced to stay in tents, or as Oren Alexander described it, these non-conforming girls would be made to "walk the plank." (GX 1004 at lines 36-37).

One of the women the defendants trafficked to the Bahamas was Amber Davis. Oren Alexander invited Ms. Davis to the Bahamas and arranged for Ms. Davis's flights and accommodations, flying her from Los Angeles to the Bahamas. (GX 1004 at lines 29, 39-43, 74-86, 146-174). In the Bahamas, the defendants hosted multiple women beyond Ms. Davis, (GX 1004 at line 92), and the defendants used the luxury accommodations on a yacht to do so, (GX 1004 at lines 16-22, 177-180). The defendants also arranged for drugs to be in the Bahamas, including mushrooms and MDMA. (GX 1004 at lines 69-71). On the final day in the Bahamas, Oren Alexander assaulted Ms. Davis by having sex with her while she was asleep. (GX 1004 at lines 183-189). The day after the assault, on May 1, 2017, Oren Alexander and Ms. Davis exchanged the following text messages.

| | |
|---|---|
| Amber Davis: | I'm seriously not cool with what happened this morning. I lost all respect for you and jenn. You both knew I didn't want it and I hope you know how wrong that is obviously I was not comfortable |
| Oren Alexander: | Really? |
| Oren Alexander: | Didn't seem like that but I'm sorry |
| Amber Davis: | Ya |
| Amber Davis: | You have to ask someone before you have sex with them |
| Amber Davis: | I woke up to a dick inside me |
| Oren Alexander: | It was my fingers first |

(GX 1004 at lines 183-189; GX B-124-1 at 25-26).

## *The Evidence is Admissible*

The evidence in Government Exhibit 1004 and in the underlying documents makes clear that the defendants worked together and with others to traffic women to the Bahamas. The defendants used luxury accommodations and access to an exclusive experience to entice women to join them in a desirable vacation destination. The defendants arranged for travel to the Bahamas for these women, and they did so knowing, or in reckless disregard of the fact, that force, fraud or coercion would be used to cause the women to perform sex acts with the conspirators. If the women the defendants trafficked failed to comply with sexual demands, the women would be kicked off the yacht and relegated to tents. The defendants also purchased drugs that would make their trafficking scheme more likely to succeed. And finally, when a woman for whom all these accommodations had been provided did not agree to the defendants' sexual demands, she was assaulted while she was asleep. Using the documentary evidence, Government Exhibit 1004 and its underlying exhibits show how the defendants' trafficking scheme operated, including the coordination among conspirators, the travel, accommodations, drugs, and sexual assault. This conduct fits squarely within the conspiracy charged in Count One.

Rather than confronting the fact that the evidence shows how the defendants and others worked together to traffic women, the defendants complain repeatedly in their letter motion that the evidence of this trafficking scheme in April 2017 is evidence of uncharged conduct for which they lack notice. But of course, as the Court has recognized, the defendants' argument that the Government is required to give pre-trial notice of its intent to introduce evidence of a charged conspiracy is "not the law." (Trial Tr. 1626). And in any event, the defendants have been on notice since exhibits were first provided to them before Christmas and since the Government started conferring with the defendants about these very exhibits in late December. (Trial Tr. at 1816-17; *see also* Ex. A (December 30, 2025 email). Indeed, when the defendants wait until the middle of the Government's case-in-chief to file a motion they planned to make since late December seeking to exclude nearly a dozen exhibits, it is the Government—not the defense—who is prejudiced.

Beyond a lack of notice, the defendants' other arguments to exclude the evidence are no better. The defendants argue that images from the Bahamas will "invite the jury to speculate, without foundation, that the defendants lured, enticed, or harbored women to the Bahamas and Exumas with promises of a luxury experience." (Def. Mem. at 2). But the jury will not be asked to speculate without foundation about anything. The jury will be asked, as it is with all evidence, to evaluate the evidence and draw reasonable inferences from it, including as the Government will argue, that the defendants did lure, entice, transport, and harbor women to the Bahamas by promising them luxury travel and experiences. Considering the evidence that the defendants rented a yacht, attended what was billed as an exclusive event, flew women from the United States to the Bahamas to attend the event, housed them on the yacht while they were there, brought drugs to the event, and then sexually assaulted at least one of the women they transported there, it will be entirely reasonable for the jury to conclude that this conduct was part of the charged conspiracy. Photographs of the tools of their conspiratorial conduct are undoubtedly relevant under Rule 401, are probative evidence of things of value provided to women, and are not in any way unduly prejudicial.

The defendants' arguments pertaining to Oren Alexander's communications with Amber Davis and Jennifer Fields likewise fail. (*See* Def. Mem. at 3). These communications are not hearsay. They are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(A), and the statements of the counterparty in the conversation (Davis or Fields) are admissible for context. As for Oren Alexander's conversation with Amber Davis, it is also admissible as an adopted admission under Federal Rule of Evidence 801(d)(2)(B). Amber Davis told Oren that she was "not cool with what happened this morning," "didn't want it," and was "not comfortable" with what he had done. When questioned by Oren, Ms. Davis expanded that what made her uncomfortable was that she "woke up with a dick inside me." To this, Oren responded, "it was my finger first." This statement by Oren affirmatively admits to having his fingers insides of Ms. Davis while she was asleep. It also incorporates Ms. Davis's claim that he had sex with her into his response and is thus an admissible adopted admission. *See* Fed. R. Evid. 801(d)(2)(B) (A statement is not hearsay if it is "one the party manifested that it adopted or believed to be true"); *see also* Fed. R. Evid. 801(d)(2)(B) advisory committee note ("[a]doption or acquiescence may be manifested in any appropriate manner."). In short, these relevant, non-hearsay communications are admissible.

The defendants claim that the Amber Davis messages—without Ms. Davis's live testimony—are "highly prejudicial hearsay that violate Oren Alexander's Confrontation Clause right to cross-examine any witnesses against him," but they are wrong. Messages between Oren Alexander and Amber Davis are admissible and are not testimonial statements covered by the Confrontation Clause. (*See* Def. Mem. at 3). As described above, the statements are being admitted as statements of a party opponent and adopted admissions of Oren Alexander, and other individuals' statements are admissible to explain his own statements. There is no statute of rule of evidence that requires otherwise admissible documents and communications to be paired with live testimony. And the messages were "not generated as part of a police interrogation, investigation, or any other process that aimed to establish or prove past events potentially relevant to later criminal prosecution," and the Confrontation Clause does not bar their admission. *United States v. Johnson*, 117 F.4th 28, 48 (2d Cir. 2024) (internal quotation marks omitted).

Finally, the defendants' Rule 403 arguments are misplaced. There is no undue prejudice that will befall the defendants from the introduction of the documentary evidence related to the to

the Bahamas in April 2017. As described above, the evidence is relevant and admissible to Count One. The evidence is also highly probative as it reflects all three defendants, among other conspirators, planning and executing their sex trafficking agreement. Any prejudice to the defendants is no more than prejudice that results from the admission of evidence of the charged conduct. And if as they claim, "the defense will be obligated to spend hours to prove that nothing that occurred during the trip to the Bahamas and the Fyre Festival was unlawful," that is not time wasting; that is what is expected during a trial. (Def. Mem. at 3).

    Respectfully submitted,

    JAY CLAYTON
    United States Attorney

By:   /s                     
    Kaiya Arroyo, Elizabeth A. Espinosa
    Andrew Jones, Madison Reddick Smyser
    Assistant United States Attorneys
    (212) 637-2226/-2216/-2249/-2381